**Earl F. KITCHEN, Respondent,**

v.

**John Warren WILSON, Appellant.**

**No. 47425.**

Supreme Court of Missouri,

Division No. 2.

May 9, 1960.

James & Jenkins, A. Lamkin James, Darold W. Jenkins, Marshall, for appellant.

Robert W. Berrey, III, Kansas City, Johnson & Rawlings, Robert D. Johnson, Marshall, for respondent.

STORCKMAN, Judge.

This is an action to recover damages for personal injuries sustained in a collision between motor vehicles. A jury found for the plaintiff and assessed his damages in the sum of $15,000. The defendant appealed and assigns error in admission in evidence of the office records of an optometrist, the manner of offering other records, and the giving of three instruc-

tions; he also contends that the damages awarded are excessive.

The collision occurred on Missouri Highway No. 240 in Saline County near the Orearville intersection on or about December 5, 1956, at about 7:15 a. m. At the place in question Highway 240 runs generally north and south, is of concrete construction 18 feet in width and the shoulders are 6 to 8 feet wide. The highway is generally winding and rolling in that vicinity. A gravel road running to the Orearville School joins the highway on the east. The plaintiff, a plumber whose home was in Kansas City, was driving a panel truck northwardly on Highway 240 and was about 300 feet south of the intersection when he saw a pickup truck driven by Kenneth Hurd slowly approach the intersection from the north with its signal light indicating the driver's intention to make a left turn onto the gravel road. The defendant Wilson, also driving south some distance behind Mr. Hurd, was about 300 feet north of the intersection when the plaintiff first saw him. The defendant applied his brakes when he saw the Hurd truck stopped or nearly so at the intersection but was unable to stop and the right front of his car struck the right rear of the Hurd truck. The defendant's automobile then caromed into the northbound lane and collided with the left side of plaintiff's truck which was partially off the pavement on the east shoulder, the plaintiff having turned it to the right when a collision appeared imminent. The plaintiff's truck spun around out of control and traveled 75 to 100 feet before coming to rest but did not turn over. The plaintiff claims injuries in the cervical region and shoulders and impairment of vision.

The defendant, a young man who was in the United States Military Service at the time of the trial, testified by deposition that he was "doing about 60 miles an hour, * * * give or take a few miles" when he came up to the curve north of the intersection. When he got to the crest of the hill, according to his testimony, he saw the Hurd vehicle about 120 or 130 feet away; its red brake lights were on and it appeared to be stopped. The defendant applied his brakes and had moved partially in the northbound lane a short distance behind the Hurd vehicle before he saw the plaintiff's truck approaching from the south. He admitted colliding first with the Hurd truck and then with the plaintiff's vehicle. The pavement was dry, but there was some moisture on the shoulders from a rain the night before. The testimony of a highway patrolman tended to prove that the defendant's car skidded 138 feet to the place where it collided with the Hurd truck in the southbound lane; that the skidmarks continued another 27 feet to the place where the defendant's car collided with the plaintiff's truck in the northbound lane; and that the defendant's car came to rest 30 feet south of where the second collision occurred. To the extent necessary, other evidence will be referred to in the course of the opinion.

The defendant first complains of the admission in evidence of plaintiff's Exhibits 17 and 18 which purport to be the office records of an ocular examination made of the plaintiff by Dr. Homer Vance, an optometrist of Marshall, Missouri, on August 16, 1958, about twenty months after the collision and shortly before the case was set for trial. Dr. Vance's secretary who had been employed by him for twelve years testified that Dr. Vance was physically unable to be in court at the time of the trial; that the exhibits were the records of Dr. Vance's examination on August 16, 1958; that she did the visual screening herself; that she wrote some of the record herself and some of it was in Dr. Vance's handwriting; that Dr. Vance dictated the report, Exhibit 18, and that she typed it; and that the records were obtained in the usual course of business and were in her custody as secretary.

Exhibit 17 consists of four sheets of forms apparently designed to record the results of an optometrical examination. The forms are filled in with marks, figures,

and handwriting, but the photographic copy of Exhibit 17 furnished to this court is largely unintelligible because of its blurred condition and the handwritten notes are generally illegible. The defendant's objection to Exhibit 17 on the ground that "it is hearsay from this witness" and denied him the right of cross-examination was overruled. There was no objection to any particular portion of the exhibit on the ground of relevancy. The transcript shows that, in addition to the name of the patient, the date of the examination, the fact that plaintiff was referred to the optometrist by counsel for the plaintiff, these findings were read to the jury: " 'Pupil response: Pupil of eye response is weak for age. Muscle suppression of both eyes. Left eye is lower than eye pupil.' 'Astigmatism in both eyes, against the rule by the left eye. Ability to focus is, at near is only fifty per cent normal for left eye. Blurred vision in left eye.' "

■■■ The records of an optometrist made in the regular course of business are within the purview of "The Uniform Business Records as Evidence Law" which includes every kind of business, profession or occupation. Section 490.670 RSMo 1949, V.A.M.S., Fisher v. Gunn, Mo., 270 S.W.2d 869, 878. Dr. Vance's secretary was competent to identify the business record and the presence of Dr. Vance was not necessary to qualify it for admission in evidence. Rossomanno v. Laclede Cab Co., Mo., 328 S.W.2d 677, 681–682. The defendant's objection on the ground of hearsay and the lack of opportunity to cross-examine the doctor was properly overruled, especially in view of the limited use made of the exhibit.

Exhibit 18, however, is in a different category. It is a statement in narrative form consisting of three typewritten pages on the business stationery of Dr. Vance. The middle portion of the exhibit has sections entitled Objective Findings and Subjective Findings which evidently were dictated from Exhibit 17. These findings are sprinkled with comment and its form and context demonstrate that the document was not made in the regular course of business for the usual purposes of the business of optometry. Omitting the findings, the exhibit reads as follows:

"Visual examination of Mr. Earl Kitchen, age 34 of Kansas City, Missouri was conducted in my office the afternoon of August 16, 1958. Case History revealed normal childhood diseases and a tonsillectomy at age 5 or 6, but no other major illness or injuries until patient was in car wreck on December 7, 1956, *which snapped the head forward and bumped the left side of the head above the left ear.*

"Major visual complaint was that in reading blue prints the patient experiences difficulty keeping lines in focus after which they begin to appear 'rippled'. The eyes have tired more easily the past 1½ years.

\*　　\*　　\*　　\*　　\*　　\*

"Conclusion

"1. The cervical sympathetic ganglia which affect the focusing of the vision *was injured in a car wreck December 7, 1956.*

"2. The pupil response to light is weak for a person of his age.

"3. There is more astigmatism in the left eye. *It was the left side of the head which was bumped in the car accident.*

"4. The ability to focus the eyes is decreased to ½ of what it should be for a person of this age.

"Therefore: *It is my considered opinion that this loss of ability to focus the eyes and the resultant 'blurred vision', together with the other three above listed observations verify the existence of a whiplash injury as the etiologic factor in the damage inflicted on this patients visual nerves and visual abilities.*" (Italics added.)

The only evidence in the transcript as to what happened to plaintiff at the time of the collision is this question and answer

from plaintiff's testimony during his direct examination: "Q. Do you have any idea what happened to you physically at the time of that impact? Did you strike anything in the car, your head hit anything? A. I evidently did; I don't remember, it was real fast." Thus, it appears that this exhibit puts in evidence a self-serving statement more favorable to the plaintiff than his own testimony and also contains factual statements and expressions of opinion foreign to the dominant purpose of the business and some of which would have been objectionable if made by the optometrist testifying in person. See Ryan v. Campbell "66" Express, Inc., Mo., 304 S.W.2d 825, 828 [4]. Exhibit 18 has the appearance of a report prepared for the information of plaintiff's counsel if not for offering in evidence at the trial. It was read to the jury in its entirety.

■ Although the purpose of The Uniform Business Records as Evidence Law is to enlarge the operation of the common law rule providing for the admission of business records as an exception to the hearsay rule, the Law does not make relevant that which is not otherwise relevant, nor make all business and professional records competent evidence regardless of by whom, in what manner, or for what purpose they were compiled or offered, and when the business record is not of the character comprehended by the Uniform Law, it is relegated to the status of hearsay and as such is not admissible in evidence. Melton v. St. Louis Public Service Co., 363 Mo. 474, 251 S.W.2d 663, 669–670; Gray v. St. Louis-San Francisco Ry. Co., 363 Mo. 864, 254 S.W.2d 577, 580; Hancock v. Crouch, Mo.App., 267 S.W.2d 36, 40 [1].

■ Assuming that Exhibit 18 was made at or near the time of the examination, yet it does not appear to have been made "in the regular course of business" as required by § 490.680. The term "regular course of business" as used in the Uniform Law "must find its meaning in the inherent nature of the business in question and in the methods systematically employed for the conduct of the business as a business." Palmer v. Hoffman, 318 U.S. 109, 63 S.Ct. 477, 481 [5], 87 L.Ed. 645, 144 A.L.R. 719, affirming 2 Cir., 129 F.2d 976. See also New York Life Ins. Co. v. Taylor, 79 U.S.App.D.C. 66, 147 F.2d 297, 303 [15]; Higgins v. Loup River Public Power Dist., 159 Neb. 549, 68 N.W.2d 170, 174 [7]; and Knudsen v. Duffee-Freeman, Inc., 95 Ga.App. 872, 99 S.E.2d 370, 374 [4]. In the Palmer case, a written statement of an engineer, who was dead at the time of trial, made in the presence of representatives of the company and the state utilities commission, pursuant to a railroad regulation and filed with the company's other records, was held not to have been made "in the regular course of business" because such records were not for the systematic conduct of the enterprise as a railroad business and the "primary utility" of such statements was "in litigating, not in railroading." 63 S.Ct. at page 481. Paraphrasing, we might properly say that the *primary* utility of Exhibit 18 was in litigating, not in the practice of optometry. Possible abuses under a contrary construction are readily apparent; they are discussed in Palmer and the other cases cited and will not be repeated here.

Section 336.010 in defining the practice of optometry stresses the "examination of the human eye" for the discovery of defects which can be corrected "by the use of lenses, prisms or ocular exercises" and the prescription of corrective glasses or exercises all "without the use of drugs, medicines or surgery". We find nothing in the law or the transcript of the record which qualifies the doctor of optometry to give an expert opinion that the plaintiff suffered "a whiplash injury" and that his cervical sympathetic ganglia "was injured in a car wreck December 7, 1956." Even when given by a doctor of medicine, such opinions are usually predicated on a reasonable medical certainty. The limitations on the practice of optometry further miti-

gate against the exhibit being a business record of an optometrist made in the regular course of business.

■ Defendant urges also that the records were not admissible because they were prepared in contemplation of the trial of the lawsuit rather than for the purpose of diagnosis and treatment. The respondent points out that there was evidence that the optometrist prescribed glasses for plaintiff's use in reading blueprints, but the plaintiff was a resident of Kansas City and it seems unlikely that his dominant purpose in traveling to Marshall for the examination was to be fitted with glasses. However, in view of our other conclusions, we need not determine if the circumstances under which the records were made affect their qualification as business records within the meaning of the Uniform Law. "Of course, if it should appear that such records have been made and kept solely for a self-serving purpose of the party offering them in evidence, it would be the duty of a trial court to refuse to admit them." Weis v. Weis, 147 Ohio St. 416, 72 N.E.2d 245, 251, 169 A.L.R. 668.

■ "The probability of trustworthiness of records because they were routine reflections of the day to day operations of a business" seems to be the justification for the admission of business records in evidence. 63 S.Ct. at page 480. Exhibit 18 is a narrative statement apparently based in part on original business entries but with embellishments, conclusions and opinions added which are not necessary or helpful to the observation, diagnosis and treatment of the patient; it does not qualify as a business record made in the regular course of business. Gray v. St. Louis-San Francisco Ry. Co., 363 Mo. 864, 254 S.W.2d 577, 580; Allen v. St. Louis Public Service Co., 365 Mo. 677, 285 S.W.2d 663, 667 [6], 55 A.L.R.2d 1022. The permissible limits of similar business entries are generally indicated in the Allen case and as stated in Gray, 254 S.W.2d at page 580: "And the fact that the entry in ques-

tion was a part of a 'narrative summary' apparently prepared from other data (not a part of the exhibit) negatives the idea that the entry was in fact a business entry." Since Exhibit 18 is not a business entry "made in the regular course of business" within the meaning of the Uniform Law, it is relegated to the status of hearsay and is inadmissible under the hearsay rule. The admission of Exhibit 18 in evidence was prejudicial error.

We find nothing in other cases cited by the respondent to justify a contrary conclusion. In Rossomanno v. Laclede Cab Co., Mo., 328 S.W.2d 677, cited by plaintiff, medical records were identified by the doctor's secretary and admitted without the doctor appearing, but the purpose of the offer was to show that the plaintiff was still being treated for previous injuries at a time much later than he had admitted on the stand. If the offerer of such business records were encouraged to indicate the purpose for which the records are offered and their relevancy, a better understanding of the purpose and proper limits of The Uniform Business Records as Evidence Law might result and there would be less likelihood of error.

■ In rebuttal plaintiff offered in evidence his Exhibit 30 with the assertion in the presence and hearing of the jury that it was the record of *convictions* of the defendant for excessive speed. The court sustained defendant's objection to the admission of the exhibit and overruled his motion for a mistrial but instructed the jury "that the remark of counsel in offering this exhibit in evidence will be stricken, and the jury will not consider it in their deliberations in this case." Exhibit 30 was a certified copy of a single conviction of driving "a motor vehicle on a highway of this state at a rate of speed so as to endanger the property of others and the lives and limbs of other persons lawfully using said highway". The prosecution and conviction grew out of the same occurrence involved in the damage suit on trial. While the remarks of plaintiff's counsel

in offering the exhibits were improper, the trial court acted promptly and adequately in order to remove any prejudicial effect of the incident. The court did not abuse its discretion in refusing to discharge the jury. Rockenstein v. Rogers, 326 Mo. 468, 31 S.W.2d 792, 800 [11, 12].

█ Since the cause must be remanded for a new trial, it would serve no useful purpose to consider the claim that the damages awarded are excessive; but some discussion of the instructions complained of may be helpful in the event of a retrial. Plaintiff's Instruction P-3 submitted the theory that the defendant "failed to pass to the right of plaintiff Kitchen's motor vehicle and to give plaintiff Kitchen at least one-half of the travelling portion of said highway". The language of this submission follows subparagraph (5) of § 304.-015, subd. 5 which applies to a roadway which has been divided into three or more clearly marked lanes for traffic. Section 304.015, subd. 2, providing that a vehicle shall be driven on the right half of the roadway (with certain exceptions), would be more nearly applicable, but under the undisputed evidence, the essential negligence could not properly be based on the duty imposed by either statutory provision. All of the evidence was to the effect that the defendant skidded into collision with the Hurd truck and "bounced" immediately into collision with the plaintiff's vehicle in the northbound lane. There was no contention that the defendant could have done anything to avoid the collision after striking the Hurd truck. The essential negligence was in defendant's antecedent operation of his automobile so as to permit it to come into collision with the Hurd truck. This instruction tended to inject a false issue into the case and failed to hypothesize the essential facts. Evans v. Colombo, Mo., 319 S.W.2d 549, 552. On the record before us the instruction should not have been given.

█ The plaintiff's Instruction P-2 submitted the operation of the defendant's automobile at a high, dangerous and excessive rate of speed, and P-4, submitted defendant's failure to keep a reasonable, careful and vigilant lookout. The defendant contends there was no evidence whatever on which to base either of these instructions. We cannot agree. From the undisputed evidence in the case, the jury could reasonably find that the defendant was driving his automobile "a few miles" in excess of 60 miles per hour on winding roads in rolling country. His basic duty was to exercise the highest degree of care and drive his automobile at a rate of speed so as not to endanger the property or the life or limb of another person, and the speed limits provided by law are not lawful in a situation where the basic duty would be violated. See § 304.010, subd. 4. The skidmarks of defendant's automobile began 138 feet north of the place where he collided with the Hurd vehicle, but according to the evidence he could have seen the Hurd vehicle at the intersection when he was 300 feet or more north of it. The jury might reasonably infer that he failed to keep a vigilant lookout. This and other evidence justified the submission of both excessive speed and failure to keep a proper lookout, either separately or in combination. In addition to the cases cited, see Moore v. Ready Mixed Concrete Co., Mo., 329 S.W.2d 14, 25 [11, 12].

█ The defendant further contends that plaintiff's entire case was submitted by his Instruction P-5 which embodied the theory that the defendant did not have his automobile under such control that he could stop or turn it aside and thereby avoid the collision with the Hurd truck. This type of instruction has been frequently criticized. As stated in Myers v. Buchanan, Mo., 333 S.W.2d 18, 21: "Lack or loss of control is usually the result of some antecedent negligent act or omission which is the essential fact that should be hypothesized." See also Annin v. Jackson, 340 Mo. 331, 100 S.W.2d 872, 876. By his submission of excessive speed and failure to keep a vigilant watch, the plaintiff ob-

tained the submission of the essential negligent acts constituent of lack of control and Instruction P-5 should not have been given. These and the other objections made should be considered in redrafting the instructions.

The judgment is reversed and the cause remanded.

EAGER, J., LEEDY, P. J., and JAMES W. BROADDUS, Special Judge, concur.