Perry McCUTCHEON and Laura McCutcheon, Plaintiffs–Respondents,

v.

CAPE MOBILE HOME MART, INC. Defendant–Appellant.

No. 57449.

Missouri Court of Appeals, Eastern District, Southern Division.

Oct. 9, 1990.

Michael' A. Price, Richey, Price, Rice, Spaeth & Heisserer, Cape Girardeau, for defendant-appellant.

Kenneth W. Shrum, Marble Hill, for plaintiffs-respondents.

CRANE, Judge.

Defendant, Cape Mobile Home Mart, Inc. [Cape], appeals from a judgment in the sum of $9,000 in favor of plaintiffs, Perry and Laura McCutcheon, on a jury verdict finding defendant Cape had breached an express warranty. We affirm.

On September 14, 1984, Mr. and Mrs. McCutcheon purchased a new mobile home from Cape Mobile Home Mart, Inc. for $15,104.38. Prior to purchase, Mrs. McCutcheon had seen televised commercials and written advertisements for good quality mobile homes at a reasonable price. They went to Cape and told the salesman that they wanted a mobile home for use as a family home. The salesman eventually showed them the mobile home that they bought. He represented to them that the home was a well-built home, the trim was sturdy, the panelling was of a better grade, and the carpet was upgraded with half inch padding. They were given a written warranty from the manufacturer. Mrs. McCutcheon asked the salesman about some terms in the written warranty. He told them it was just a formality, that they had nothing to worry about because all Cape's new mobile homes had a one year warranty and anything that came loose on the interior or exterior within the year would be replaced.

After taking delivery of their new mobile home, Mr. and Mrs. McCutcheon discovered serious structural defects along with numerous minor problems resulting from defects in material and workmanship. Because sufficiency of the evidence is not at issue, we will not describe these defects in detail. Mrs. McCutcheon periodically informed Cape of the problems beginning in October, 1984. In June, 1985 Cape made some repairs, but the problems continued. In 1989, after suit was filed, Cape performed an additional $1,453.24 in repairs. However, these repairs did not correct the basic defects. The McCutcheons offered the testimony of three expert witnesses who were all experienced in mobile home repairs and one of whom had also been a mobile home dealer. These experts testified that the defects in the mobile home were caused by poor quality materials and workmanship.

One of these expert witnesses, who had twelve years experience in renovating and rebuilding mobile homes, testified that to rebuild the mobile home to standard quality for mobile homes would cost $10,000. The second expert witness, who had 25 years experience in mobile home sales and repairs, testified that because of the inferior quality of workmanship and materials, the fair market value of the home in September, 1984 was $6,000 to $7,000. The third expert witness, who had rebuilt or remodelled over 100 mobile homes, testified it would cost $9,000 to $11,000 to repair or rebuild the mobile home so it would be fit to be used as a personal residence. Mrs. McCutcheon testified that in her opinion the fair market value of the mobile home when they bought it, considering the inferior materials and workmanship, was $4,000 to $5,000. Mr. McCutcheon testified that in his opinion the home was worth $5,000 when they bought it.

Cape offered the testimony of two repairmen it had hired to work on the McCutcheon's mobile home. They testified to the repairs they had made. Cape's former district manager testified that in October, 1988 he estimated the cost of repairs to the mobile home to be $2,000 and its fair market value to be $11,000.

The case was submitted to the jury on breach of express warranty. The jury returned a verdict in the amount of $9,000.

For Cape's first point, it states:

The Trial Court erred in giving instruction No. 10 on damages, as submitted by Plaintiffs, in that said instructions, not in MAI, was contrary to the law under the evidence.

■ First we note that this point, like Cape's following two points, does not comply with Rule 84.04(d).[1] Rule 84.04(d) states, with respect to "points relied on" in appellate briefs:

> (d) Points Relied On. The points relied on shall state briefly and concisely what actions or rulings of the court are sought to be reviewed and wherein and why they are claimed to be erroneous, with citations of authorities thereunder....

In *Thummel v. King*, 570 S.W.2d 679, 685 (Mo. banc 1978), our supreme court gave the following explanation of the "wherein and why" requirements in points relied on:

> [C]ompliance with these requirements is a matter of common sense if counsel bear in mind the informational purpose of the brief. After stating the ruling the trial court actually made, it stands to reason that the point should then specify *why* the ruling was erroneous. This requirement essentially contemplates a statement which ordinarily will closely approximate what appellant believes should have been the trial court's conclusion of law on the point being addressed. After stating why the ruling was erroneous, the court then must be informed *wherein* the testimony or evidence gives rise to the ruling for which appellant contends.

Point I fails to comply with Rule 84.04(d) because it does not state "wherein" and "why" the instruction "was contrary to the law under the evidence." *Heins v. Murphy*, 610 S.W.2d 15, 18 (Mo.App.1980).

There was no objection to this instruction at trial. When Cape's attorney was asked if he had any objections to instruction 10,

he responded, "No, your honor." Since there was no objection, a specific objection was required in the motion for new trial. Rule 70.03 states: "Specific objections to instructions shall be required in motions for new trial unless made at trial." Rule 78.07 states: "Any specific objections to instructions which were not made at the trial before submission to the jury, must be set forth in the motion for new trial to preserve error for review."

The claim of error regarding the giving of Instruction 10 raised in Cape's Motion for New Trial is as follows:

> 14. Because the Court erred in giving Instruction No. 10 (damage instruction) as a modified 4.02, not in MAI Instructions, as submitted by Plaintiffs, using a breach of contract case, *Hensic vs. Afshari Enterprises, Inc.*, 599 S.W.2d 522 (Mo.App.1980) having to do with damages to real property, breach of contract, cost of repair and/or diminution in value, as opposed to a damage instruction for a breach of warranty case as submitted by Plaintiffs under Instruction No. 7; that the Court's giving of Instruction No. 10 (a modified 4.02 MAI) was against the law in the State of Missouri and coupled with the incompetent and unqualified witnesses and opinions, both lay and expert, introduced by Plaintiff and admitted by the Court, over the objection of Defendant, produced a verdict against the greater weight of the credible evidence and a miscarriage of justice.

Thus, the only allegation of error preserved for review in the motion for new trial is that the court erred in giving a damage instruction based on breach of contract rather than breach of warranty. By failing to include this specific allegation of error in Point I, Cape abandoned it. Issues not presented in the points to be argued in an appellate brief are abandoned and will not be considered. *Jones v. Eagan*, 715 S.W.2d 596 (Mo.App.1986).

---

1. Rule references are to Missouri Rules of Civil Procedure (21st ed. 1990), except where otherwise indicated.

■ In spite of Cape's failure to preserve any issue of error with respect to Instruction 10, we will exercise our discretion to review the submission of Instruction 10 for plain error under Rule 84.13(c). When an instruction is not found in MAI (as is the case here), the test of that jury instruction is whether it "follows the substantive law and can be readily understood." *Massey–Ferguson Credit Corp. v. Black,* 764 S.W.2d 137, 144 (Mo.App.1989). Instruction 10 reads as follows:

> If you find the issues in favor of the plaintiffs, then you must award the plaintiffs such sum as you may find from the evidence to be the difference between the fair market value of the Atlantic mobile home as when sold to plaintiffs and its fair market value had it been constructed so that it was fit to be used as plaintiff's personal residence and home.

This instruction follows the law and can be readily understood. The case was submitted to the jury on the theory of breach of the express warranty under Section 400.-2–313 RSMo 1986 that the "mobile home was a good quality mobile home fit for use as plaintiffs' personal residence." Cape claims its obligation was limited to repair and replacement of defective parts. Even if its warranty was so limited, where the warrantor fails to correct the defect within a reasonable period, the limited warranty of replacement or repair fails its essential purpose and is avoided under Section 400.-2–719(2). When this occurs all contractual remedies are available to the buyer. *Givan v. Mack Truck, Inc.,* 569 S.W.2d 243, 247 (Mo.App.1978). Of these, the most commonly applied formula for damages is "the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted." Section 400.2–714(2) RSMo 1986. This measure of damages is identical to that submitted by Instruction 10.

Although nowhere preserved for review, Cape claims that the measure of damages should have been cost of repair rather than diminution in value, citing language in a footnote in *Smart v. Tidwell Industries, Inc.,* 668 S.W.2d 605, 609 n. 2 (Mo.App. 1984) which states that "when the evidence shows the cost of repair or restoring the property or its represented condition to be significantly less than the diminution of value, the former is the proper measure of damages."

■ As that footnote also points out, MAI 4.17, for use in warranty cases, does not mention this modification which comes from MAI 4.02, for use in property damage cases. Even if the modification does apply to warranty cases, the use of cost of repair as a measure of damages is appropriate only where the cost of repair is comparatively insignificant to the diminution in value. Committee Comments, MAI 4.02.

> The general rule as heretofore stated, is that the measure of damage is the difference between the reasonable value of the property before and the reasonable value thereof after the accident. We are aware that in cases where the amount of damage is insignificant, as compared to the value of the property as a whole and involves only a small part thereof, there is an exception to the above general rule. However, before allowing plaintiff to rely solely on evidence of the costs of repair, there should be a showing of the comparative insignificance of the damage to bring the case within such exception to the general rule.

*Gulf, M. & O.R. Co. v. Smith–Brennan Pile Co.,* 223 S.W.2d 100 (Mo.App.1949), as quoted in Committee Comments, MAI 4.02.

■ In this case the cost of repair was not comparatively insignificant. The McCutcheons presented the testimony of one expert that the home was of such poor quality that replacement would be the remedy, that the cost to "put it back together like it should have been would be $10,000." Another expert witness testified that it "would take a lot of remodelling" to make the mobile home usable for a residence. A third expert testified it would cost $9,000 to

$11,000 to repair or rebuild the mobile home so that it would be fit to be used as a personal residence. Thus there was evidence that the cost of putting it in proper condition could be as much as $11,000 whereas the evidence of the diminution in market value was $9,000.00. It is clear that the cost of repair or restoration was significant, and it was not plain error for the court to have instructed the jury on a diminution of value measure of damages.

■ Moreover, if the damage instruction had limited the jury to cost of repair, the amount of the verdict, $9,000, would have been within the evidence. Thus Cape was not prejudiced. *Smart, supra,* 668 S.W.2d at 609. Point I is denied.

Cape's second point is as follows:

The trial court erred in overruling the objections by defendant to the expert opinions elicited from Plaintiffs' witnesses, six (6) exhibits of real evidence and three (3) exhibits of photographs in that said testimony and evidence was unqualified, impermissible, without sufficient foundation, irrelevant, unfair, inaccurate and highly prejudicial.

This point is so general it does not comply with Rule 84.04(d) *Parsons Construction Co. v. Missouri Public Serv. Co.,* 425 S.W.2d 166, 174 (Mo.1968). Moreover it does not state why the testimony and evidence was unqualified, impermissible, *etc. Id.* at 175. Notwithstanding this deficiency, we will consider the issues raised in the argument under this point in order to review and determine this issue on the merits.

Cape contends that the trial court erred in admitting three types of evidence: expert testimony, photographs of the defects, and physical evidence including such items as flooring, carpet backing, doors, and trim. We will address each of these in turn.

■ Cape claims that the admission of the experts' opinions was in error because the experts were unqualified and because their opinions as to the condition and value of the mobile home were based on observations at the time of the trial rather than four years earlier during the warranty period. The determination of an expert witness's qualifications in the field in which his testimony is sought rests in the first instance in the sound discretion of the trial court. Its decision in that respect should not be set aside in the absence of a showing of an abuse of discretion. *Eichelberger v. Barnes Hospital,* 655 S.W.2d 699, 704 (Mo.App.1983); *Maples v. Charles Burt Realtor, Inc.,* 690 S.W.2d 202, 213 (Mo.App.1985).

■ The expert witness must have sufficient skill, knowledge, or experience in the field or calling as to make it appear that his opinion will probably aid the trier of fact in its search for the truth. *Eichelberger, supra,* 655 S.W.2d at 704. As we have detailed in the portion of the opinion setting out the facts of this case, the witnesses had substantial experience in the repair of mobile homes. This is a permissible source of expertise and the trial court did not abuse its discretion in permitting these witnesses to testify as experts. *Russell v. Mid–Western Homes & Truss, Inc.,* 514 S.W.2d 651 (Mo.App.1974).

■ One expert witness testified to his opinion of the value of the house at the time it was delivered. Cape argues that this witness should not have been allowed to testify to the condition and value of the home at the time of sale when his examination of the house took place five years later. "A qualified expert witness may consider facts which are related to him in a hypothetical question or are within his personal knowledge and give his conclusions or opinions based on that information." *Maples, supra,* 690 S.W.2d at 213. This witness was asked questions which were designed to elicit an opinion as to whether the defects he found were part of the original workmanship and, if so, how that workmanship affected the original value of the home. They were not improper. *Maples, supra,* 690 S.W.2d at 213.

The cases cited by Cape, *Hotchner v. Liebowits*, 341 S.W.2d 319 (Mo.App.1960) and *Ribando v. Sullivan*, 588 S.W.2d 120 (Mo.App.1979), are clearly distinguishable. In both cases judgment in favor of plaintiff home buyers was reversed and remanded on the issue of damages because there was no evidence of the value of the home at the time of completion. In this case such evidence was offered.

■■■■■ Cape next contends that the admission of photographs taken by the McCutcheons of the mobile home over a period of time was reversible error. The determination of relevance and materiality of a photograph and its admission or rejection rests in the first instance in the discretion of the trial judge, and his ruling will not be disturbed on appeal unless that discretion has been abused. *Dudeck v. Ellis*, 399 S.W.2d 80, 96 (Mo.1966).

We find no abuse of discretion here. The jury was informed of the approximate time each photograph was taken and could not have been misled into believing the photographs purported to depict the conditions as they existed at the time of delivery or within the warranty period. *Smart, supra*, at 607.

The damage caused by faulty workmanship and materials is usually progressive. Photographs taken of damage to a home after the point of breach are admissible to show the progressive nature of the damage. *Smart, id.* Defects in workmanship or construction may not become visually apparent until sometime after construction. Thus photographs showing the resultant harm may be relevant or material. It is within the discretion of the trial judge to make such a determination.

■■■ Cape next contends that the admission of certain physical evidence, consisting of materials removed from the mobile home, was prejudicial and irrelevant in that the evidence did not show the condition of those items when the mobile home was purchased. The determination of admissibility of demonstrative evidence lies within the sound discretion of the trial court. *Welsh v. Burlington Northern R. Co.*, 719 S.W.2d 793, 797 (Mo.App.1986); *Fravel v. Burlington Northern R.R.*, 671 S.W.2d 339, 342–43 (Mo.App.1984), *cert. denied*, 469 U.S. 1159, 105 S.Ct. 907, 83 L.Ed.2d 921 (1985).

The items of physical evidence were not offered to prove the condition of those items at the time the mobile home was purchased. That evidence was offered as proof of the quality of the material and so that the jury could actually see those objects which were the subject of the dispute. There was no basis on which the jury could have been misled into believing that these items were exactly in the same condition five years earlier. There was no abuse of discretion with respect to the admission of evidence. *Smart, supra*, 668 S.W.2d at 607. The second point is denied.

■■■ Cape's third point reads as follows:

The trial court erred in failing to enter judgment in favor of defendant notwithstanding the jury verdict and/or failing to grant defendant a new trial in that the trial court abused its discretion in overruling defendant's motions for directed verdicts at the close of plaintiffs' evidence and at the close of all the evidence.

This point does not comply with Rule 84.-04(d) because it fails to specify wherein and why the trial court erred in ruling on these motions. *Tierney v. Berg*, 679 S.W.2d 919, 921 (Mo.App.1984). We decline to review such contentions. *Thummel v. King*, 570 S.W.2d 679 (Mo. banc 1978). Moreover, the corresponding argument section does not specifically address wherein or why the court erred. The "argument" merely makes vague generalized criticisms of the trial court and invites the court to search the transcript, the exhibits, and the legal file in order to come to various conclusions proposed by Cape. There are no references to the record beyond references to the motion for a new trial, which we are urged to consult to determine what Cape's argument is. The argument section is further

deficient in that it cites no law in support of any conclusion it urges upon this court. Of the five cases cited, three were cited for the proposition that denials of motions for judgments notwithstanding the verdict are treated on appeal in the same manner as denials from motions for directed verdict (without setting forth what that standard is or how it relates to this case), one case was cited for the proposition that courts of appeals must decide whether plaintiff made a submissible case (without setting forth the standards governing that review or how they are to be applied to this case), and one case for the proposition that the court of appeals can examine records to determine if the trial court abused its discretion. None of these propositions supports any claim of error. We accordingly find nothing in or under this point to review. *Chill v. Kadean Construction Company,* 716 S.W.2d 860 (Mo.App.1986); *Barkley v. Monsanto Co.,* 717 S.W.2d 566, 568 (Mo. App.1986). Point III is denied.

■ The McCutcheons have filed a motion under Rule 84.19 seeking damages for a frivolous appeal. Although Cape did not properly preserve its points for review, the underlying issues were not wholly devoid of merit and we cannot conclude that the appeal was taken in bad faith. *Burrous v. American Airlines, Inc.,* 639 S.W.2d 263, 265 (Mo.App.1982). We deny the motion. However, as we said in *Burrous,* our failure to impose sanctions should not be taken as approval.

The judgment of the trial court is affirmed.

CRANDALL, C.J., and KAROHL, J., concur.