Barbara LANE, Appellant,

v.

SCHREIBER FOODS, INC., Great American Insurance Co., and Missouri State Treasurer, as Custodian of Second Injury Fund, Respondents.

No. 19954.

Missouri Court of Appeals,
Southern District,
Division Two.

July 24, 1995.

John Wise, Hershewe & Gulick, P.C., Joplin, for appellant.

Ronald G. Sparlin, Blanchard, Robertson, Mitchell & Carter, P.C., Joplin, for respondents Schreiber and Great American.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jefferson City, Cara Lee Harris, Asst. Atty. Gen., Springfield, for Second Injury Fund.

PARRISH, Judge.

Barbara Lane appeals an award of the Labor and Industrial Relations Commission (the Commission) for permanent partial disability as a result of occupational disease. She contends the Commission erred in not finding permanent total disability and in failing to find Second Injury Fund liability. This court affirms.

 Appellate review of workers' compensation awards is governed by established principles:

> This court may modify, reverse, remand for rehearing or set aside the award of the commission only if the commission's actions were unauthorized by law or in excess of its authority, fraudulent, unsupported by the facts as found by the commission, or unsupported by competent evidence. § 287.495 [RSMo 1986]. "The Commission is the sole judge of the credibility of the witnesses and the weight and value of the evidence." *Tyra v. Delta Vet-*

erinary Clinic, Inc., 687 S.W.2d 931, 934 (Mo.App.1985). The inquiry on questions of fact decided by the Commission "is limited to whether, upon the whole record and considering the evidence in the light most favorable to the Commission's findings, the Commission could have reasonably made such findings and reached the result it did." Swillum v. Empire Gas Transport, Inc., 698 S.W.2d 921, 925 (Mo.App.1985). This court may not substitute its judgment on issues of fact for the judgment of the commission even if this court would have made a different initial conclusion. Sellers v. Trans World Airlines, Inc., 776 S.W.2d 502, 504 (Mo.App.1989).

Lawson v. Emerson Electric Co., 833 S.W.2d 467, 470–71 (Mo.App.1992). Consistent with this standard of review, evidence that might support a different finding is disregarded. Rector v. City of Springfield, 820 S.W.2d 639, 640 (Mo.App.1991).

Ms. Lane began working for Schreiber Foods, Inc. (Schreiber) in January 1979. She was a production worker. Her tasks included picking up stacks of cheese from a conveyor belt and laying them against pegs on a chain belt for transport to another part of the plant. She also assisted in "casing" cheese. She would group quantities of cheese, inspect the cheese and package it in perforated boxes she assembled. Occasionally she worked on other production lines. Sometimes she was required to lift a 5–pound block of cheese in each hand. She worked for Schreiber until July 11, 1990, when she had carpal tunnel surgery on her right hand. She has not been employed since that date.

Sometime in the 1980's Ms. Lane developed problems with her wrists. She first experienced pain in her left wrist; then in her right wrist. Ms. Lane first had surgery on her left hand.

Following the surgery on Ms. Lane's left hand, she underwent physical therapy. She did not experience problems with her wrist during therapy. However, when she returned to work it hurt again. After she returned to work following surgery on her left hand, Ms. Lane experienced pain across both wrists and forearms. The pain "kind of ran down the hands and up into the elbows."

During her employment at Schreiber, Ms. Lane also experienced psychiatric problems. She was diagnosed and hospitalized for 14 days in 1983 for paranoid schizophrenic disorder and placed on medication. Since then she has continuously been under the care of a psychologist or psychiatrist. She was again hospitalized for her emotional disorder in 1987, 1990 and 1991.

Evidence was offered at Ms. Lane's workers' compensation hearing that she was disabled due to the combination effect of her physical disability and her psychiatric disability, and that she was not capable of competing for employment in the open market. The evidence was refused upon objection by Schreiber's attorney and the attorney for the Second Injury Fund.

Ms. Lane's first point on appeal is directed to the exclusion of evidence directed to the issue of the combined effect of a preexisting mental illness and the disability from her occupational illness, i.e., whether she is totally disabled rather than partially disabled as found by the Commission. She complains that the exclusion of evidence from three witnesses, Dr. Aly Mohsen, Dr. Lester Bland and Dr. G.L. Unruh was error.

Aly Mohsen, M.D., testified by deposition. Dr. Mohsen was asked if, in evaluating Ms. Lane and rating her disability, he considered "the combined effect upon her employability by reason of the bilateral carpal tunnel syndrome and other repetitive trauma disorder and her preexisting emotional disorder, the paranoid schizophrenic disorder." He answered that he considered the combined effect of the carpal tunnel disability and the emotional disorder as well as her age, education, work skills, transferrable skills, future employability, and ability to compete in the open job market without special consideration.

Dr. Mohsen was then asked, "And, what is your opinion about her ability to compete in the open labor market as a result of the combined effect of those conditions, either bilateral carpal tunnel syndrome and the paranoid schizophrenic disorder?" The attorney for Schreiber and its insurer and the attorney for the Second Injury Fund objected on

the basis that they were not furnished with any report in which Dr. Mohsen attributed "any combined or enhanced disability as a consequence in the effect of any preexisting conditions and these work-related impairments"; that no report disclosed "enhanced disability or enhanced unemployability"; that "the seven-day rule" as set forth in § 287.210 [1] was not met.

The administrative law judge sustained the objection as to the portions of Dr. Mohsen's deposition that related to the combined disabilities. The remainder of the deposition was received in evidence.

Section 287.210.3 states:

The testimony of any physician who treated or examined the injured employee shall be admissible in evidence in any proceedings for compensation under this chapter, but only if the medical report of the physician has been made available to all parties as in this section provided. Immediately upon receipt of notice from the division or the commission setting a date for hearing of a case in which the nature and extent of an employee's disability is to be determined, the parties or their attorneys shall arrange, without charge or costs, each to the other, for an exchange of all medical reports, including those made both by treating and examining physician or physicians, to the end that the parties may be commonly informed of all medical findings and opinions. The exchange of medical reports shall be made at least seven days before the date set for the hearing and failure of any party to comply may be grounds for asking for and receiving a continuance, upon proper showing, by the party to whom the medical reports were not furnished. *If any party fails or refuses to furnish the opposing party with the medical report of the treating or examining physician at least seven days before such physician's deposition or personal testimony at the hearing, as in this section provided, upon the objection of the party who was not provided with the medical report, the physician shall not be permitted to testify at that hear-*

*ing or by medical deposition.* [Emphasis added.]

Dr. Mohsen acknowledged during cross-examination that his report, a copy of which was provided Schreiber and its insurer and the Second Injury Fund, did not specify that Ms. Lane's disability was greater because of her previous emotional disorder.

■ The report required to be given to adversary parties in workers' compensation cases must include the "patient's history, complaints, details of the findings of any and all laboratory, X-ray and all other technical examinations, diagnosis, prognosis, nature of disability, if any, and an estimate of the percentage of permanent partial disability, if any." § 287.210.5. A report that is incomplete warrants disallowance of the doctor's testimony about the excluded matter although the doctor is allowed to testify as to matters included in the report. *Johnson v. Park N Shop*, 446 S.W.2d 182, 187 (Mo.App. 1969).

Ms. Lane argues that, notwithstanding Dr. Mohsen's failure to specify an enhanced prior condition as a basis for the finding included in his report, Schreiber and its insurer and the Second Injury Fund were put on notice that Dr. Mohsen would testify concerning the combination effect; that this "notice" was sufficient to enable him to testify. This argument is based on Dr. Mohsen's statement during cross-examination, "With regard to the combined, I indicate in my final notes on page five that in the final determination consideration should be taken for the above listed diagnoses, above listed limitations and impairments, patient's age, education, previous work skills, transferrable skills, future employability, and ability to compete in the open job market without any special consideration." That argument fails.

■ A statement in a report that a patient's identified limitations and impairments "should be" considered in making a final determination is not sufficient. Parties who receive an examining physician's report are entitled to know the examiner's conclusion, not factors that may be considered in arriving at a conclusion. Dr. Mohsen's report did

1. References to statutes are to RSMo Supp.1992 unless stated otherwise.

not specify that Ms. Lane's disability was a product of an enhanced preexisting condition. The Commission did not err in disallowing Dr. Mohsen's testimony regarding any combination effect Ms. Lane's occupational disease had on her preexisting emotional condition.

Ms. Lane's complaint regarding disallowance of testimony offered by Dr. Bland is directed to his attempt to express an opinion concerning her employability "in the open competitive labor market." Objections were made that he was not competent to offer an opinion as a vocational expert; that his expertise was "as a psychological expert and not as a vocational expert."

Dr. Bland testified as to his professional qualifications. He holds a bachelor's degree in psychology, a master's degree in school psychology and a doctorate in clinical psychology. He completed a predoctoral residency at the U.S. Medical Center for Federal Prisoners in Springfield, Missouri. He is a licensed psychologist in Missouri and Arkansas. He is a licensed professional counselor in Arkansas. He maintains a private practice as a clinical psychologist in Springfield, Missouri.

Dr. Bland was asked about his "practical experience." He answered:

From '76 until I think 1985, I believe those dates are accurate, I worked in a community health center. As part of my duties in that center, ran a partial care program for chronically mental ill individuals who would come in and we would diagnose them and provide treatment services for them. Also provide a general outpatient services, did psychological assessments. While I was at the medical center I received a year's training on that cite [sic], which was an in-patient facility doing criminal forensic studies and dealing with people in acute mental distress, acute mental illness and with chronic illnesses like schizophrenia, those types of ailments. Since I've gotten out of formal training and my own practice that I set up, the bulk of my practice is consulting and assessment. I consulted with Federal Bureau of Prisons for several years doing criminal competency and responsibilities studies for them.

I've done a consistent business in criminal studies for circuit courts, for attorneys, usually in criminal matters. Do neuropsychological assessments for the Department of Vocational Rehabilitation. Do school assessments for learning disability children, behavior disorder children and so on. Have hospital consultation practice where I subcontract with Cox North Hospital facility and provide consultation to their inpatient services for alcohol and drug patients. Privileges at Lakeland Regional Hospital where I consult with them and do the children's—child assessments and so forth.

Dr. Bland also serves as a faculty member at Forest Institute of Professional Psychology. He teaches statistics and research design.

Dr. Bland was asked if he had knowledge, experience or training in the field with respect to rendering opinions about employability. He testified that he was "trained by the state to provide psychological consults to a variety of individuals who complain of various psychological ailments." His duties included looking at "activities of daily living" per "guidelines" and offering judgments of whether individuals are mildly, moderately or severely impaired. He acknowledged that he knew nothing about the medical diagnosis or treatment of carpal tunnel.

In a civil action "if scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." § 490.065.1 RSMo 1986; *McCutcheon v. Cape Mobile Home Mart, Inc.*, 796 S.W.2d 901, 906 (Mo.App. 1990); *Eichelberger v. Barnes Hospital*, 655 S.W.2d 699, 704 (Mo.App.1983). In order for a witness to be qualified as an expert, it must be shown that by reason of education or specialized experience the witness possesses superior knowledge respecting a subject about which persons having no particular training are incapable of forming an accurate opinion or of drawing correct conclusions. *City of Ballwin v.*

*Hardcastle,* 765 S.W.2d 324, 326 (Mo.App. 1989).

*Donjon v. Black & Decker,* 825 S.W.2d 31, 32 (Mo.App.1992).

Ms. Lane argues that Dr. Bland had "some qualifications" demonstrating an ability to testify as an expert with respect to her employability. She contends, therefore, that the trier of fact abused its discretion in not allowing Dr. Bland to testify about the combined effect of her emotional disability and her disability from carpal tunnel disorder on her employability in the "open competitive job market." She relies on the principle that the extent of an expert's training goes to the weight of the testimony; it does not render the testimony incompetent. *In Interest of C.L.M.,* 625 S.W.2d 613, 615 (Mo. banc 1981).

 The fallacy in this argument is that while Dr. Bland's testimony establishes him as an expert in various areas of applied psychology, it does not establish him as a vocational expert. The fact-finder has discretion to determine an expert's qualifications to testify on specific matters. *Wingate by Carlisle v. Lester E. Cox Medical Center,* 853 S.W.2d 912, 918 (Mo. banc 1993). The exclusion of Dr. Bland's testimony regarding Ms. Lane's overall employability was not an abuse of discretion.

Ms. Lane also complains about the Commission's refusal to admit a letter from Dr. Gregory L. Unruh in evidence. The letter was addressed to one of Ms. Lane's attorneys. She contends the letter should have been considered to be part of Dr. Unruh's business records that were admitted in evidence. The business records that were admitted were Ms. Lane's medical records from the clinic in which Dr. Unruh practices, the Carthage Clinic of Osteopathic Medicine.

The medical record that was admitted in evidence includes the statement dated August 23, 1990:

Patient continues to have discomfort in both forearms, both elbows are tender. Apparently her hand from surgery from Dr. Dandridge is reasonably symptomatic but the forearms continue to give her difficulty. It is unlikely that she will really do any good at all with this, judging from length of time she has been off and multiple attempts to treat this. She gets a little weepy, almost a little depressed looking. She continues to await an appointment with Dr. Lefevre in Springfield for the 28th of this month. ANALYSIS: Ongoing tendonitis of both right and left forearms, resolved carpal tunnel right hand; schizophrenia depression. PLAN: Will continue patient on leave of absence, as I do not think that she could return to work and be there any length of time and be of any worthwhile to herself or employers. It is unlikely that this length of time that the patient ever will be able to go back. There is some fear that if she did probably her hands and wrists would tend to become more problematic and undoubtedly she would worsen her forearm status.

That statement is followed by:

See copy letter Mr. Hershewe.

Unruh/8/24/90/t

The letter that was not admitted in evidence is dated August 24, 1990. It is addressed to Edward J. Hershewe, Attorney at Law, 516 Pearl, Joplin, Missouri 64801. It states:

RE: Barbara J. Lane

Dear Mr. Hershewe:

Pleased be advised that my client, Barbara J. Lane, who is also seeing you for ongoing help in her arm related problems is most likely unemployable at this specific point in time.

Her elbows continue to remain tender. She has resolved her right carpal tunnel syndrome that has been operated by Dr. Dandridge nicely but this was not expected to do her elbows any good. They are both involved. It is likely that in the repetition work at her current place of employment, as well as any other work available in Carthage for her training and level, she is basically unmarketable. With that in mind, she probably is indeed disabled at 100%.

If I may be of further service to you, please feel free to notify me.

Sincerely,

/s/ GL Unruh

G.L. Unruh, D.O.

GLU:t

The attorney for Schreiber and its insurer objected to the offer of the August 24, 1990, letter in evidence on the basis that it was hearsay; that it did not come under the business record exception to hearsay because it is a letter to an attorney in a case discussing matters other than the current care and treatment of the patient. The objection was sustained.

■ To qualify as a business record and be admitted in evidence as a hearsay exception, (1) the record must be identified, (2) its mode of preparation must be shown, (3) the record must have been made in the regular course of business, and (4) the record must have been made at or near the time of the act, condition or event it memorializes. *Wulfing v. Kansas City Southern Industries, Inc.*, 842 S.W.2d 133, 153 (Mo.App.1992).

Dr. Unruh's letter is akin to the letter that was denied admissibility in *Kitchen v. Wilson*, 335 S.W.2d 38, 42 (Mo.1960). It is a writing on Dr. Unruh's business stationery. It contains information not otherwise stated in the business records from Dr. Unruh's clinic that were in admitted evidence. The letter states a "probable" opinion that Ms. Lane is "disabled at 100%"; that it is likely she is "basically unmarketable" at her place of employment "as well as any other work available in Carthage for her training and level."

It has the appearance of a report prepared for the information of Ms. Lane's attorney or for use as evidence at trial. Its mode of preparation was not shown. There was no showing that the letter was prepared in the regular course of examining or treating Ms. Lane.

■ The fact that Dr. Unruh's business records contain an entry that states, "See copy letter Mr. Hershewe," followed on the next line by the note, "Unruh/8/24/90/t," does nothing more than acknowledge that an August 24, 1990, letter was sent to Ms. Lane's attorney. The refusal to admit a copy of Dr. Unruh's letter in evidence was not error. Point I is denied.

Point II contends the Commission erred in affirming and adopting the administrative law judge's finding that Ms. Lane was not permanently totally disabled because the determination "is not supported by substantial evidence and is clearly contrary to the overwhelming weight of the evidence."

Ms. Lane contends she established that she was permanently totally disabled by (1) her testimony; (2) Dr. Mohsen's testimony "concerning the combination effect" of her disabilities and her educational and occupational backgrounds; (3) Dr. Bland's testimony that she could not compete in the open labor market; (4) Phillip Eldred's testimony that she was not employable; (5) Dr. Unruh's opinion that she was totally disabled. She further claims that the Commission applied an incorrect standard in determining whether the Second Injury Fund was liable for permanent disability benefits.

■ As previously discussed, this court, in its review, considers the evidence adduced in the light most favorable to the decision of the Commission. *Lawson v. Emerson Electric Co., supra.* The evidence before the Commission included a report from William P. Folck, M.D., based on his examination of Ms. Lane, which concluded:

> It is concluded that Barbara Lane represents a bilateral carpal tunnel syndrome with fair result from surgical intervention. She does have the left thenar atrophy and some mild to moderate residual symptomatology.

> Based upon the present examination she has a permanent partial disability of the left hand at the wrist of 10%. She has a disability of the right hand at the wrist of 05%. Due to the bilateral involvement it is concluded that she has a permanent partial disability of the body as a whole of 7.5%.

> Mrs. Lane at this time shows no other significant physical impairment. She appears to be functioning quite well with reference to her general musculoskeletal system. She does have the history of paranoid schizophrenia, which certainly shows no overt manifestations at this time. She is a healthy appearing well functioning lady presenting a good appearance and certainly is employable. I do not feel that it is wise for her to engage in physical activities requiring repetitive hand and

wrist motion, however, she can certainly do such in moderate activities. She is not permanently and totally disabled.

■■■■ Dr. Folck's report is dated September 26, 1991. He examined Ms. Lane September 24, 1991. The report supports the Commission's award. It constitutes substantial evidence. To the extent this evidence conflicts with other evidence, this court defers to the Commission's determination concerning the weight of the evidence and matters of credibility. *Cole v. Town & Country Exteriors,* 837 S.W.2d 580, 583 (Mo.App. 1992).

The evidence that Ms. Lane contends established that she is permanently totally disabled includes the testimony of Dr. Mohsen and Dr. Bland and an opinion of Dr. Unruh that was not admitted in evidence. This court concluded in determining Point I that no error was committed in refusing that evidence.

■■■■ This leaves Ms. Lane's testimony and Phillip Eldred's testimony. The effect and impact of her testimony is for determination by the fact-finder. It is an issue that goes to the weight of the evidence.

The same is true with respect to Mr. Eldred's testimony. He is a vocational rehabilitation counselor. He holds a master's degree in guidance and counseling and a Bachelor of Science degree from Southwest Missouri State University. He gave the opinion that Ms. Lane was totally unemployable at the time of the hearing. However, he added, "I'm not capable of saying whether that's going to be permanent in nature, that would be left up to the doctor."

Ms. Lane further argues, with respect to Point II, that "the Commission applied an incorrect standard in determining whether the Second Injury Fund was liable for permanent total disability benefits." She contends the standard established by an amendment to the applicable statute that became effective June 21, 1993, was not applied in this case.

This case was decided after June 21, 1993. Second Injury Fund liability is governed by § 287.220, RSMo Supp.1993. As explained in *Leutzinger v. Treasurer of Missouri Cus-* *todian of Second Injury Fund,* 895 S.W.2d 591 (Mo.App.1995), "[T]he proper criteria for determining whether a preexisting injury is serious enough to trigger the provisions of § 287.220 RSMo Supp.1993 are as follows: The preexisting injury need only be a 'hindrance or obstacle to employment or to obtaining reemployment.' " *Id.* at 593.

■■■■ The Commission's adopted findings, quoting from *Carron v. Ste. Genevieve School District,* 800 S.W.2d 64, 68 (Mo.App.1990), define industrial disability as "a disability adversely effecting [sic] a claimant's ability to work or earning capacity, rather than physical impairment as such." The findings further explain, "The Second Injury Fund is not liable if the pre-existing disability has *not* *hindered* employee's ability to work or affected his capacity to earn a living." [Emphasis added.] The Commission did not apply an inappropriate standard in denying Second Injury Fund liability. Point II is denied.

Points III and IV repeat Ms. Lane's contentions that findings that she was not totally permanently disabled and that evidence did not support a need for future medical care are erroneous. She contends the Commission erred in affirming and adopting the decision of the administrative law judge that so found. For the reasons heretofore given, these points are denied. The award is affirmed.

GARRISON, P.J., and CROW, J., concur.