David W. KAUFFMAN (deceased),
Donna L. Kauffman, Claimant–
Appellant,

v.

TRI–STATE MOTOR TRANSIT
COMPANY, Employer–
Respondent.

No. 23219.

Missouri Court of Appeals,
Southern District,
Division Two.

Aug. 11, 2000.

Motion for Rehearing or Transfer
denied Sept. 5, 2000.

Application for Transfer Denied
Oct. 31, 2000.

**370**

William J. Fleischaker, Roberts, Fleischaker, Williams, Wilson & Powell, Joplin, for appellant.

Ronald G. Sparlin, Blanchard, Robertson, Mitchell & Carter, P.C., Joplin, for respondent.

PHILLIP R. GARRISON, Judge.

The issue in this workers' compensation case is whether the Labor and Industrial Relations Commission ("Commission") erred in refusing to consider the contents of a letter from a treating doctor to the claimant's attorney on the issue of causation. We affirm.

David W. Kauffman ("Employee") was employed as a truck driver with Tri–State Motor Transit Company ("Tri–State") beginning in September 1988, and some of the loads he apparently drove included radioactive material. He was diagnosed with leukemia in August 1992 and died April 9, 1993.

Employee's widow, Donna L. Kauffman ("Claimant") sought death benefits in a workers' compensation claim against Tri–State, contending that her husband's death was caused by exposure to the radioactive materials he transported as part of his work with Tri–State. The claim was tried before an associate administrative law judge ("ALJ") who issued an award finding that Employee's death was not work related and denying benefits. Claimant sought a review by the Commission which affirmed the award and decision of the ALJ denying compensation, incorporating the ALJ's award in its final award. Claimant appeals.

 In reviewing a workers' compensation award, we review the findings of the Commission and not those of the ALJ. *Gordon v. Tri–State Motor Transit Co.,* 908 S.W.2d 849, 852 (Mo.App. S.D.1995). Where, as here, the Commission incorporates the ALJ's award and decision, we consider the findings and conclusions of the Commission as including the ALJ's award. *Kaderly v. Race Bros. Farm Supply,* 993 S.W.2d 512, 514 (Mo.App. S.D. 1999). Findings and awards of the Commission which are clearly the interpretation or application of the law, as distinguished from a determination of facts, are not binding on the court and fall within the court's province of independent review and correction where erroneous. *Leslie v. School Servs. and Leasing, Inc.,* 947 S.W.2d 97, 99 (Mo.App. W.D.1997).

In Claimant's sole point on appeal, she contends that the Commission erred in failing to consider "an opinion on causation

expressed by Employee's treating doctor in a letter to Employee's attorney." She contends that the Commission's exclusion of the letter as hearsay was error in that the letter was part of the treating doctor's medical records which were admissible as business records, and the fact that the letter was correspondence to the attorney "did not cause it to be excluded as a business record where the doctor was qualified to express the opinions in the letter and he would have been entitled to testify as to the matter in the letter were he present at the hearing."

■ The letter in question was from Dr. William Crosby ("Dr. Crosby"), one of Employee's treating doctors, in response to a letter from Employee's attorney.[1] The attorney had written Dr. Crosby on October 28, 1992, saying:

I am proceeding forward with filing an occupational disease claim on behalf of [Employee]. We have established that during his period of employment with Tri–State he did, from time-to-time, drive trucks hauling radioactive materials. In order to pursue his claim I need to establish that he was exposed to the hazards of his current disease during the period of his employment. [Employee] states that during periods of time of his employment he did operate vehicles hauling radioactive waste. The precise nature and content of these loads is unknown at the present time. On behalf of [Employee], I am attempting to determine whether or not you can render a medical opinion that he was exposed to the hazards of the risk of his current disease as the result of driving transport units hauling the radioactive waste. I need to know what, if any, additional information you need pertaining to the type and frequency of loads of radioactive waste in order to make your determination or if this particular information is even necessary to make such a deter-

mination. In addition, I need to know whether or not there is a "threshold" level of exposure which needs to be established in order to establish that [Employee] was exposed to the risk of his current illness as the result of hauling radioactive waste. Please feel free to give me a call to discuss this in greater detail.

In response, Dr. Crosby wrote Employee's attorney on November 5, 1992 saying:

[Employee] is a 40 year old truckdriver (sic) who was discovered on 04 September, 1992 to have chronic granulocytic leukemia (CGL). He was asymptomatic at the time; the elevated leukocyte count was discovered on a random blood test.

CGL is an uncommon disease. It is known to be caused by ionizing radiation (X-ray, gamma atomic energy). Individual susceptibility varies: at the same dose some people get CGL and some do not. Susceptibility is dose dependent: i.e., when the dose is higher more people get CGL; when the dose is lower fewer get CGL. It is believed that no dose is so low that it can be accepted as safe.

[Employee] has been hauling radioactive waste during his employment as a truckdriver (sic). The extent of his exposure to radiation is not known to me, e.g. how often he hauled a radioactive load, how radioactive the loads were, what was the kind of radioactivity; how many hours he was exposed each time, what protection against exposure was provided on the truck, how far from the source of radioactivity was [Employee] during the haul.

The amount of exposure to ionizing radiation can be accurately quantified by the worker's wearing on his shirt an exposure badge. These badges are collected and examined each month. A permanent record is made of the infor-

---

1. Dr. Crosby was apparently not available to testify or be deposed because of a medical

condition.

mation in the badge. [Employee] has never worn a badge.

These letters were offered in evidence before the ALJ, but were refused on the objection that they were not business records and were hearsay. The ALJ held, in her award, that Claimant had failed to introduce evidence establishing a cause of death or that the death was work related. On review, the Commission affirmed the ALJ's award, and issued an additional opinion affirming the failure to consider the letter from Dr. Crosby.[2]

*Lane v. Schreiber Foods, Inc.*, 903 S.W.2d 616 (Mo.App. S.D.1995) was a workers' compensation case in which one issue was the exclusion of a letter from one of the claimants' doctors to her attorney. There, as in the instant case, the objection was that the letter was hearsay and was not a business record. *Id.* at 622. This court held that it was not error to exclude the letter, saying that it had the appearance of being prepared for the information of the claimant's attorney or for use as evidence at trial, its mode of preparation was not shown, and there was no showing that the letter was prepared in the regular course of examining or treating the claimant. *Id.* The same is true in the instant case. Here, the letter in issue was in response to a letter from Employee's attorney requesting an opinion, which would assist in the handling of the workers' compensation claim. In particular, the attorney was requesting an opinion that Employee had been "exposed to the hazards of the risk of his current disease as the result of driving transport units hauling the radioactive waste." Dr. Crosby's letter, construed most liberally, said that Employee's disease is caused by "ionizing radiation (X-ray, gamma atomic energy);" that susceptibility varies, but that no dose

is so low that it can be accepted as safe; and that he did not have information to determine the extent of his exposure to radiation from hauling radioactive waste.[3] Like the *Lane* case, this letter was obviously not prepared in the regular course of examining or treating Employee.

Of similar import is *Carmack v. Bi–State Dev. Agency,* 731 S.W.2d 518 (Mo. App. E.D.1987). There, the plaintiff in a personal injury action called the custodian of her doctor's records and unsuccessfully attempted to introduce a letter from the doctor to her attorney. In affirming, the appellate court said that the letter was not qualified as a business record because it was not a contemporaneous record of the doctor's observations, diagnosis, treatment and progress as required by the Uniform Business Records Act, § 490.680. *Id.* at 520.

These cases are consistent with the statement contained in such cases as *Kitchen v. Wilson,* 335 S.W.2d 38, 43 (Mo. 1960), where the court said that "business records as an exception to the hearsay rule, the Law does not make relevant that which is not otherwise relevant, nor make all business and professional records competent evidence regardless of by whom, in what manner, or for what purpose they were compiled or offered, and when the business record is not of the character comprehended by the Uniform Law, it is relegated to the status of hearsay and as such is not admissible in evidence." *See also Tile–Craft Prod. Co., Inc. v. Colonial Properties, Inc.,* 498 S.W.2d 547, 549 (Mo. 1973).

Claimant cites *Smith v. Wal–Mart Stores, Inc.,* 967 S.W.2d 198 (Mo.App. E.D. 1998), where the plaintiff was permitted to introduce a treating physician's medical

---

**2.** One of the three members of the Commission dissented, essentially saying that he would hold that other portions of the medical records which were admitted provided sufficient evidence of causation. The sufficiency of that other evidence is not an issue on this appeal.

**3.** No issue is raised on this appeal concerning the sufficiency of that letter on the causation issue and we express no opinion on that matter.

records which included a report containing the doctor's opinion about the causation of injuries. She points out that the court said, "[t]he mere fact that records include a statement of expert medical opinion does not bar admission of the records." *Id.* at 205. We do not quarrel with that general statement, however, we also note that in *Smith* the parties agreed that the records in question qualified as business records, an event which did not occur in the instant case with reference to the letter in issue.

Also cited by Claimant is *Sigrist by and through Sigrist v. Clarke*, 935 S.W.2d 350 (Mo.App. S.D.1996). In that case, the court said that the qualification of a hospital record under the business records act does not necessarily make all parts of the record automatically admissible in that objectionable parts may be excluded if proper specific objection is made. *Id.* at 353. She stresses that we said in *Sigrist*, "[t]he appropriate test for admissibility of specific portions of medical records is whether the person whose opinions are recited in the record could have testified regarding those portions if present at trial." *Id.* at 354. This presumes, however, that the portion of the record in question is appropriately qualified as a business record. Again, this did not occur with reference to the letter in question.

The Commission did not err in failing to consider the letter from Dr. Crosby as a business record in this case. The point is denied. The award is affirmed.

PREWITT, J., and MONTGOMERY, P.J., concur.