James M. Dowd, Judge
Homeowners Robert W. Cockerham and Stacia A. Cockerham and their homeowner's insurance provider American Family Mutual Insurance Company filed cross-motions for summary judgment arising out of a dispute regarding coverage under Homeowners' insurance policy for losses that occurred in connection with the construction of an addition to their residence which Homeowners intended to use as a celestial observatory. Specifically, Homeowners sought coverage for the damage that occurred to a newly-installed telescope support system, to the foundation of their home, and for their loss of use of the observatory.
Homeowners now appeal the judgment of the Circuit Court of St. Louis County that granted American Family summary judgment on Homeowners' claims for breach of contract and vexatious refusal to pay. Homeowners contend that the court erred (1) by finding no coverage under the policy for their various asserted losses, and (2) by finding in favor of American Family on Homeowners' claim of vexatious refusal to pay.
Factual and Procedural Background
Homeowners purchased their residence on Lakeshore Drive in Creve Coeur, Missouri in 2001. Four years later, Homeowners hired Nicholas H. Schalk and Schalk Construction, LLC (collectively, "Schalk") to construct an addition to their residence that they intended to use as an observatory. Because the observatory would employ a telescope, the project included the construction of a telescope support system. Schalk had never previously built such a system, so it declined to do that portion of the project which involved the installation of the support system's piers. Homeowners contracted with another company, Helitech, to install those piers. Schalk was also unwilling to pour concrete over the piers once installed, so Schalk engaged a subcontractor to do that work.
Homeowners assert that Schalk's subcontractor poured the concrete incorrectly and damaged the piers, the telescope support system's pole, and the foundation of Homeowners' residence. Homeowners subsequently made a claim to American Family to cover their losses from this damage, and for the loss of use of the observatory. American Family denied coverage asserting that Homeowners' damages were all excluded or uncovered losses under the policy.
In April 2015, Homeowners sued American Family for breach of contract and vexatious refusal to pay. American Family answered that Homeowners' losses were excluded or not covered under their policy.
*865 Homeowners and American Family filed cross-motions for summary judgment. On September 23, 2016, the trial court entered judgment denying Homeowners' and granting American Family's motion for summary judgment.
Standard of Review
Appellate review of summary judgment is de novo. ITT Comm'l Fin. Corp. v. Mid-Am. Marine Supply Corp., 854 S.W.2d 371, 376 (Mo.banc 1993). Summary judgment is appropriate when there are no genuine disputes of material fact and the movant is entitled to judgment as a matter of law. Id.
Discussion
I. Controlling Legal Principles
The interpretation of an insurance contract is a question of law and is given de novo review. Mendenhall v. Prop. & Cas. Ins. Co. of Hartford , 375 S.W.3d 90, 92 (Mo.banc 2012), When construing an insurance policy, the words must be given their plain meaning consistent with the reasonable expectations, objectives, and intent of the parties. Chase Resorts, Inc. v. Safety Mut. Cas. Corp., 869 S.W.2d 145, 150 (Mo.App.E.D. 1993). Plain meaning means that which would be attached by an ordinary person of average understanding if purchasing insurance. Jones v. Mid-Century Ins. Co., 287 S.W.3d 687, 690 (Mo.banc 2009). A policy's terms are to be defined as they would be by the layman who purchased the policy, unless the policy terms disclose that a technical or narrow meaning was intended. Ritchie v. Allied Property & Cas. Ins. Co., 307 S.W.3d 132, 135 (Mo.banc 2009).
Words or phrases in an insurance contract must be interpreted in the context of the policy as a whole and not considered in isolation. Long v. Shelter Ins. Co., 351 S.W.3d 692, 696 (Mo.App.W.D. 2011). When a policy does not define a particular term, courts use the ordinary meaning of the word as set forth in the dictionary. Schmitz v. Great Am. Assur. Co., 337 S.W.3d 700, 708 (Mo.banc 2011). And in interpreting an insurance contract, we must endeavor to give each provision a reasonable meaning and to avoid an interpretation that renders some provisions useless or redundant. Dibben v. Shelter Ins. Co., 261 S.W.3d 553, 556 (Mo.App.W.D. 2008).
II. The damage to the telescope support system's piers and vole and to the foundation of the home.
Homeowners first take issue with the trial court's finding of no coverage for the damage to the telescope support system's piers and pole, and to the foundation of the home. We agree and find that the trial court erred in this regard.
The policy here provides in pertinent part:
PROPERTY COVERAGES - SECTION I
COVERAGE A - DWELLING
We cover:
1. the described dwelling on the insured premises including additions, built-in components and fixtures;
....
PERILS INSURED AGAINST - SECTION I
COVERAGE A - DWELLING AND DWELLING EXTENSION
We cover risks of accidental direct physical loss to property described in Coverage A - Dwelling and Dwelling Extension, unless the loss is excluded in this policy....
....
EXCLUSIONS - SECTION I ...
....
PART C
*866 The following exclusions apply to Coverage A - Dwelling and Dwelling Extension. We do not insure for loss caused by any of the following.
....
2. Planning, Construction or Maintenance, meaning faulty, inadequate or defective:
a. construction, reconstruction, repair, remodeling or renovation;
b. materials used in construction, reconstruction, repair, remodeling or renovation;
c. design, workmanship or specifications;
d. siting, surveying, zoning, planning, development, grading or compaction; or
e. maintenance;
of part or all of the insured premises or any other property.
....
However, we do cover any resulting loss to property described in Coverage A - Dwelling and Dwelling Extension not excluded or excepted in this policy....
Our finding of coverage for these losses is centered on two specific policy provisions: (1) the policy's exclusion for faulty construction; and (2) the exception to that exclusion for "resulting loss" and on the requirement under the rules of construction that those two provisions be harmonized. While we find that the policy excludes coverage for losses caused by faulty construction, the "resulting loss" clause in Part C of the Exclusions section, considered in the context of the whole policy, reinserts coverage for Homeowners' losses for the damage to the telescope support system's piers and pole, and to the foundation of the home.[1]
Our task is not an easy one and requires us to decipher a rather prolix word puzzle. Part C's exclusions, applicable primarily to the policy's property coverages, unequivocally exclude losses for faulty or defective construction which would appear to implicate at least some if not all of the work and damage at issue here. And if Part C stopped there, Homeowners would be hard-pressed to make a successful claim for their losses.
But, of course, Part C does not stop there. Instead, American Family inserted this modifying clause immediately following the exclusion at issue: "However, we do cover any resulting loss to property described in Coverage A - Dwelling and Dwelling Extension not excluded or excepted in this policy." American Family argues that because Homeowners' losses were already excluded as being caused by faulty construction, this clause's use of the phrase "not excluded or excepted in this policy" means that this clause has no bearing on these already-excluded losses. We reject this argument because it would require us to ignore the first part of the clause: "However, we do cover for any resulting loss to property...."
The policy does not define "resulting loss." And though the dictionary provides the following definition for the verb form of the word "result"-"to proceed, spring, or arise as a consequence, effect, or conclusion: come out or have an issue," WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY , UNABRIDGED , MERRIAM WEBSTER 1937 (1993)-the policy does not state specifically what a covered "resulting loss" may result from , except that losses will not be *867 covered that are "excluded or excepted" in the policy.
We believe an ordinary purchaser of insurance would conclude that where one loss results from another loss caused by faulty construction, such resulting loss is covered. This policy interpretation gives each insurance provision a reasonable meaning where possible, consistent with our duty under Missouri law, and avoids an interpretation that renders any provision useless or redundant. Dibben, 261 S.W.3d at 556. Therefore, here, where the losses from the damage to the telescope support system piers and pole, and to the home's foundation, resulted from the excluded loss caused by the bad concrete pour-the cost of removing and replacing the incorrectly-poured concrete-we find that the language of the policy must be construed so that the losses to the piers, pole, and foundation are covered resulting losses.
We are mindful that the losses to the telescope support system's piers and pole, and to the foundation of the home, resulted directly from the bad concrete pour. Given that fact, it may seem that the policy's exclusion for losses "caused by" faulty construction might exclude coverage here. But to give the faulty-construction exclusion such a reading would render useless or redundant the resulting loss clause, allowing the exclusion to swallow its clearly-stated exception.
III. The loss of use caused by the damage to the observatory.
Homeowners also assert that the trial court erred by finding no coverage for their loss of use of the planned observatory. Because the policy provides property coverage for loss of use only when the insured premises is rendered uninhabitable, and it is undisputed that such did not occur here, we agree with the trial court.
The relevant policy language is as follows:
PROPERTY COVERAGES - SECTION I....
....
COVERAGE C - LOSS OF USE
The limit for Coverage C is the actual loss incurred by you within 12 months following the date of loss for all the following coverages.
1. If a loss covered under this section makes that part of the insured premises where you reside uninhabitable, we will pay:
Additional Living Expense, meaning any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living. Payment will be for the shortest time required to repair or replace the damaged property or, if you permanently relocate, the shortest time required for your household to settle elsewhere....
Here, Homeowners admit that they remained within their home after the observatory was damaged. They do not assert that their home was at any point rendered uninhabitable. And most important, they have no claim of additional living expenses, the only sort of compensation available under the policy's Coverage C for loss of use. Consequently, we find that the court did not err in concluding that there is no covered loss of use from the damage to the observatory.
We are unpersuaded by Homeowners' attempt to conjure coverage for loss of use from the policy's definition of "property damage." We acknowledge that a prefatory section of the policy states that, as used in the policy, "Property Damage means physical damage to or destruction of tangible property, including loss of use of this property." But critically, the term "property *868 damage" is used nowhere in the property coverage section at issue here -only in the liability coverage section inapplicable to this case. Therefore, the definition of property damage as inclusive of loss of use is simply irrelevant here, where we must determine whether, based on the provisions of Coverage C - Loss of Use cited above, Homeowners have property coverage for the loss of use from damage to the observatory-not whether Homeowners are covered for their own personal liability for property damage.
IV. Homeowners' claim of vexatious refusal.
Homeowners in their final point on appeal claim the trial court erred by denying their motion for summary judgment and granting American Family's motion on Homeowners' claim that American Family vexatiously refused to pay for Homeowners' losses. Because we find on this record that there are genuine disputes of material fact as to whether American Family vexatiously refused to pay for Homeowners' damages to the telescope support system's piers and pole, and to the foundation of the home, we find that the court erroneously granted American Family's motion for summary judgment on this claim.
The law is well-settled that for an insured to obtain a penalty for an insurance company's vexatious refusal to pay a claim, the insured must show that the refusal was willful and without reasonable cause or excuse, as the facts would have appeared to a reasonable person before trial. Watters v. Travel Guard Int'l, 136 S.W.3d 100, 108 (Mo.App.E.D. 2004) (citing DeWitt v. Am. Family Mut. Ins. Co., 667 S.W.2d 700, 710 (Mo.banc 1984) ; §§ 375.296, 375.420). Thus, where there is an open question of law or fact relating to a claim under an insurance policy, the insurer may insist upon a judicial determination of those questions without being penalized for vexatious refusal to pay. Drury Co. v. Mo. United Sch. Ins. Counsel, 455 S.W.3d 30, 38 (Mo.App.E.D. 2014). The test for a vexatious refusal claim is not the final resolution of the coverage issues but how willful and unreasonable the insurer's refusal was as the facts appeared to a reasonable and prudent person at the time the insurer was asked for coverage. Id. Consequently, there is no vexatious refusal where the insurer has a meritorious defense to a claim of coverage under its policy. Watters , 136 S.W.3d at 109 (citing Wood v. Safeco Ins. Co. of Am., 980 S.W.2d 43, 55 (Mo.App.E.D. 1998) ).
Given our analysis of the coverage issues in this case, it is clear that American Family did not vexatiously refuse to provide coverage for Homeowners' claim for loss of use. However, we find that there are genuine disputes of material fact as to whether American Family vexatiously refused to provide coverage for Homeowners' losses from the damage to the telescope support system's piers and pole, and to the foundation of the home. Specifically, there is a factual dispute as to the willfulness and unreasonableness of American Family's refusal to provide coverage.
Militating against a finding of willfulness and unreasonableness are the facts that the policy provides no definition for the term "resulting loss" and the clause somewhat confusingly follows an exclusion of coverage for losses "caused by" faulty construction. Moreover, no Missouri case directly addresses the coverage issues presented by a policy with these characteristics, as applied to a claim for coverage like the one here.
Nevertheless, it is also true that here Homeowners allege that representatives of American Family including an American Family adjuster told them that their losses *869 would be covered. Homeowners further assert that in conversations with American Family representatives, they were told that they did not need to obtain a builder's risk policy, in addition to their homeowner's insurance policy, to ensure coverage of losses like the ones that occurred here. Finally, Homeowners note that American Family failed in its reservation of rights letter, its answer to Homeowners' petition, and its summary judgment filings to cite the resulting loss clause, instead quoting only the faulty-construction exclusion in explaining their conclusion that Homeowners' losses were clearly excluded under the policy.
In light of these facts, we believe that a genuine dispute exists as to whether American Family vexatiously refused to provide coverage for Homeowners' losses from the damage to the telescope support system's piers and pole, and to the foundation of the home. We cannot say as a matter of law whether American Family's refusal to pay was willful and unreasonable. Therefore, we believe this question must be addressed by the trier of fact during further proceedings in the trial court.
Conclusion
For the reasons stated above, we affirm the trial court's decision as to Homeowners' claims of coverage and vexatious refusal to pay for loss of use from the damage to the observatory. However, with regard to Homeowners' claim of coverage for their losses from the damage to the telescope support system's piers and pole, and to the home's foundation, we reverse and remand for the entry of judgment in favor of Homeowners. And finally, as to Homeowners' claim of vexatious refusal regarding the damage to piers, pole, and foundation, we reverse and remand for further proceedings consistent with this opinion.
Sherri B. Sullivan, P.J., and Lawrence E. Mooney, J., concur.

We note that Homeowners attempt to raise for the first time on appeal claims for coverage for "resulting losses" from water damage to the observatory. However, we decline to rule on such claims as they were not included in Homeowners' petition or motion for summary judgment in this case and thus were not litigated on this record.