

# Missouri Court of Appeals

## Southern District

### Division One

Gary Chastain and Casey Chastain,     )
    )
    Appellants,     )
    )     SD:36869
    vs.     )
    )     **Filed:  July 29, 2022**
United Fire & Casualty Company and,     )
Lawrence Photo and Video, Inc.,     )
    )
    Respondents.     )

APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

Honorable Mark A. Powell, Judge

## AFFIRMED

Appellants, Gary Chastain and Casey Chastain ("the Chastains") appeal the trial court's denial of their motion for summary judgment and subsequent grant of summary judgment in favor of Respondent, United Fire & Casualty Company ("United Fire"), on the Chastains' claim of equitable garnishment. The Chastains raise two points on appeal, asserting: (1) United Fire's insurance policy is ambiguous and those ambiguities should be construed to grant coverage, and (2) a genuine issue of material fact existed that precluded summary judgment. We affirm.

## Background and Procedural History

On December 18, 2014, Gary Chastain took 47 of his family videos to Lawrence Photo and Video, Inc., ("Lawrence Photo")[1] to be converted and copied to digital video disks (DVDs). The Chastains' video collection consisted of thirty-eight film reels, seven VHS tapes, one 8-millimeter tape, and one audio cassette (hereinafter "the Videos"). The Videos contained family events spanning the 1970's and 1980's. Gary Chastain received two claims tickets with an estimated completion time of four to six weeks.

After waiting several weeks, Gary Chastain called Lawrence Photo and spoke to its vice president, Kathy Delicato. During a subsequent phone call, Ms. Delicato explained to Gary Chastain that the Videos were not finished before eventually admitting that the Videos had been lost.

As of May 5, 2015, Gary Chastain still had not received the Videos or any completed DVDs, so he went to Lawrence Photo. Upon arriving, he found the store was out of business, but Ms. Delicato was still inside preparing the store for its new owners. Ms. Delicato allowed Gary Chastain inside the store and summoned another employee, Tyler Beck.

Delicato and Beck searched for the Videos without success, confirming they were not in the location used to store completed orders. Employees had been instructed to leave customer orders in a storage area reserved for customer orders and were further instructed that no customer orders should be thrown away.[2] Beck, who had filled out the Chastains' claim ticket, remembered seeing the Videos, but could not find them and was

---

[1] Lawrence Photo did not file a brief or participate in this appeal.
[2] Based on the record it appears that any unclaimed orders were assets purchased by the new owners of Lawrence Photo and any unclaimed orders were to be left with the new owners in case customers wished to pick them up.

bewildered as to their location.  Other customer orders were on the shelves, and those orders were not to leave the shelves unless a customer came in to pick up an order.  None of Lawrence Photo's employees knew what happened to the Videos, beyond identifying where the videos should have been.

Lawrence Photo informed its insurer, United Fire, that the Chastains' videos had been lost.  Lawrence Photo reported that the loss occurred prior to Gary Chastain's visit on May fifth.  United Fire investigated the loss, but neither Lawrence Photo nor the Chastains were able to explain how the Videos had gone missing.  Delicato confirmed that the tapes were lost, that no one knew what happened to them, and that it was a mystery.  As a result, United Fire issued a denial of claim letter.  The letter provided that because there was no explanation as to what happened to the Videos, United Fire was denying coverage based on a provision in the policy that required the existence of some physical evidence showing what happened to missing property.

After receiving the letter denying the claim, the Chastains filed a civil petition against Lawrence Photo seeking recovery for the loss of the Videos.  Lawrence Photo did not appear or defend the suit, and on January 26, 2017, a default judgment was entered against them.

The Chastains brought suit seeking equitable garnishment against United Fire and Lawrence Photo, alleging that the insurance policy provided by United Fire covered the lost videos, which were the subject of the underlying judgment against Lawrence Photo.  United Fire filed a counterclaim for declaratory judgment against the Chastains and a cross-claim for declaratory judgment against Lawrence Photo.  United Fire filed a motion for summary judgment seeking a declaratory judgment on the equitable garnishment

3

claim.  The Chastains filed a response and cross motion for summary judgment.  The trial court heard oral arguments on the motions.

The trial court entered judgment in favor of United Fire and denied the Chastains' motion for summary judgment,  holding that although the Videos qualified as Covered Property, they did not meet the second requirement for coverage, which required a Covered Cause of Loss.  The trial court further stated that there was "no explanation or evidence to show where, when, how or why [the Videos] were lost[,]" and there was "no physical evidence to show what happened to [the Videos,]" therefore United Fire was entitled to judgment as a matter of law on the equitable garnishment claim.  The Chastains filed a timely notice of appeal.  This appeal follows.

### Point I- The "Property of Other" clause is not ambiguous

*Standard of Review*

"The interpretation of an insurance policy, and the determination whether coverage and exclusion provisions are ambiguous, are questions of law that this Court reviews *de novo*." ***Burns v. Smith***, 303 S.W.3d 505, 509 (Mo. banc 2010).  "Where, as here, the trial court granted summary judgment, this Court also applies a *de novo* standard of review."  ***Id.***  This means we do not defer to the trial court's decision. ***Newton v. Mercy Clinic E. Communities***, 596 S.W.3d 625, 628 (Mo. banc 2020). Rather, we employ the same criteria the trial court should have used in deciding whether to grant the motion.  ***Id.***  "A 'genuine issue' that will prevent summary judgment exists where the record shows two plausible but contradictory accounts of the essential facts." ***Great S. Bank v. Blue Chalk Constr., LLC***, 497 S.W.3d 825, 829 (Mo.App. 2016) (quoting ***Wallingsford v. City of Maplewood***, 287 S.W.3d 682, 685 (Mo. banc 2009)).  We rarely review an appeal from the denial of summary judgment.

4

***Schnurbusch v. W. Plains Reg'l Animal Shelter***, 571 S.W.3d 191, 203 (Mo.App. 2019). On very rare occasions, we will review the denial of summary judgment where the facts asserted by both parties are nearly identical and are so intertwined that the propriety of granting the motion is purely an issue of law.[3] ***Keystone Mut. Ins. Co. v. Kuntz***, 507 S.W.3d 162, 166 (Mo.App. 2016).

We begin by addressing the interpretation of United Fire's insurance policy, which is a question of law that we determine *de novo*. ***Seeck v. Geico Gen. Ins. Co.***, 212 S.W.3d 129, 132 (Mo. banc 2007). If an "insurance clause appears to provide coverage but other clauses indicate that such coverage is not provided, then the policy is ambiguous, and the ambiguity will be resolved in favor of coverage for the insured." ***Id.*** at 134. However, "[t]he mere presence of an exclusion does not render an insurance policy ambiguous." ***Floyd-Tunnell v. Shelter Mut. Ins. Co.***, 439 S.W.3d 215, 221 (Mo. banc 2014). "In construing the terms of an insurance policy, this Court applies the meaning which would be attached by an ordinary person of average understanding if purchasing insurance, and resolves ambiguities in favor of the insured." ***Seeck***, 212 S.W.3d at 132 (internal quotation marks and citation omitted). "An insured cannot create an ambiguity by reading only a part of the policy and claiming that, read in isolation, that portion of the policy suggests a level of coverage greater than the policy actually provides when read as a whole." ***Owners Ins. Co. v. Craig***, 514 S.W.3d 614, 617 (Mo. banc 2017).

---

[3] Though the Chastains assert that they are appealing the denial of their summary judgment motion and the corresponding grant of United Fire's motion, they have not identified how the motions rely on the same set of intertwined facts. They assert that the material facts are undisputed. However, they dispute the material facts involved within their second point on appeal. After reviewing both motions, we have determined that the competing motions for summary judgment involve different legal claims and do not involve identical intertwined facts. Therefore, we will not review the denial of the Chastains' motion for summary judgment.

*Discussion*

In their first point, the Chastains assert that United Fire's policy was ambiguous in that the Videos fall within the definitions provided in the "Covered Property" subsection of the policy and there are no relevant exclusions to coverage within that subsection. Rather, relevant exclusions appear in subsequent subsections, "Covered Causes of Loss" and "Limitations," so the Chastains contend that the policy appears to grant coverage before stripping that coverage away. The Chastains further argue that an average person of ordinary understanding would read the only provision relating to "property of others," see that the lost videos fall within the policy's definition of "Covered Property," and would believe that since the only listed exception does not apply to their circumstance United Fire would pay for their loss. The relevant policy provisions are reproduced below:

**Businessowners Coverage Form**

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

. . . .

**Section I – Property**

  **A. Coverage**

  We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

    **1. Covered Property**

    Covered Property includes Buildings as described under Paragraph a. below, Business Personal Property as described under Paragraph b. below, or both . . . .

      . . . .

6

b. Business Personal Property located in or on the building at the described premises or in the open (or in a vehicle) within 100 feet of the described premises including:

. . . .

(2) Property of others that is in your care, custody or control, except as otherwise provided in Loss Payment Property Loss Condition Paragraph **E.5.d.(3)(b)**; [4]

. . . .

**2. Property Not Covered**

. . . .

**3. Covered Causes of Loss**

Risks of direct physical loss unless the loss is:

a. Excluded in Paragraph B. Exclusions in Section I; or

b. Limited in Paragraph 4. Limitations in Section I.

**4. Limitations**

a. We will not pay for loss of or damage to:

. . . .

(3) Property that is missing, where the only evidence of the loss or damage is a shortage disclosed on taking inventory or other instances where there is no physical evidence to show what happened to the property.

The policy requires that an individual[5] seeking coverage for loss or damage to their property establish that the damaged property qualified as "Covered Property" and that

---

[4] Paragraph E.5.d.(3)(b) provides the method to determine the value of lost or damaged property in the insured's control. It states that if the lost item is subject to a contract governing liability, then the value of the lost item will be based on the amount of liability under the contract. In the absence of a contract, the loss value is restricted to the lesser of the replacement cost or limit of insurance. This provision does not provide an exception to coverage. Rather, it clarifies the policy limits available for claims relating to property of others.

[5] At oral argument, counsel for United Fire explained that the "property of others" provision allowed for hybrid claims so that either the insured or a damaged third party could make a claim under the policy.

7

the damage or loss resulted from a "Covered Cause of Loss." The policy includes extensive definitions of both "Covered Property" and "Covered Cause of Loss," in addition to definitions regarding what is excluded from those two categories. The policy also includes additional coverages which alter or expand the "Covered Property" and "Covered Cause of Loss" definitions. The policy consistently requires that a claimant seeking coverage demonstrate that their claim involved "Covered Property" that was damaged or lost due to a "Covered Cause of Loss."

The Chastains urge this Court to stop reading the policy after the "Covered Property" subsection, arguing that because the Videos were "property of others" in Lawrence Photo's care, custody or control and the listed exception to "Covered Property" is inapplicable, the Videos are covered. The Chastains' proffered interpretation requires that we read the policy so selectively that we would ignore the remainder of the policy regardless of later relevant and applicable provisions. We cannot apply such a narrow reading where we have been directed to review the policy as a whole. *See **Swadley v. Shelter Mut. Ins. Co.**, 513 S.W.3d 355, 357 (Mo. banc 2017). We further note that the "Covered Property" subsection, including the provision discussing property of others, does not grant coverage. Rather, it defines only one of the two essential requirements for coverage, namely the qualification as Covered Property. As such, Appellants ask this Court to find coverage where none exists. **Owners Ins. Co.**, 514 S.W.3d at 617.

Appellants assert that the application of the "physical evidence" exception renders the "property of others" provision ambiguous, but the mere presence of such an exclusion does not automatically render an insurance policy ambiguous. **Floyd-Tunnell**, 439 S.W.3d at 221. The Supreme Court has explained that the presence of an exclusion or other insurance clause may render a policy ambiguous. **Seeck**, 212 S.W.3d at 134.

8

However, "[s]uch a clause can be clearly written and enforceable if not contradicted or rendered ambiguous by other clauses of the insurance contract." *Id.*, n3. We recognize that definitions, exclusions, conditions, limitations, and endorsements are necessary provisions in insurance policies. *Floyd–Tunnell,* 439 S.W.3d at 221. "If they are clear and unambiguous within the context of the policy as a whole, they are enforceable." *Id.* (quoting *Todd v. Mo. United Sch. Ins. Council*, 223 S.W.3d 156, 163 (Mo. banc 2007)). In this case, the policy makes clear from the first sentence of Section I – Property, Subsection A – Coverage, that not all losses to Covered Property will be covered by the policy. The first sentence clearly states that United Fire will only pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss. Thus, the policy is not rendered ambiguous by the fact that there are limitations to Covered Causes of Loss. *See Swadley*, 513 S.W.3d at 357.

Appellants also argue that the application of the limitation to coverage of property of others contained in **E.5.d.(3)(b)** precludes the application of other limitations, such as the "physical evidence requirement," to coverage of property of others. This argument overlooks the fact that the provision addressing property of others is contained within the definition of Covered Property, all of which is still subject to the requirement that the casualty be the result of a Covered Cause of Loss for coverage to apply. The "physical evidence requirement" is a component of the definition of a Covered Cause of Loss. Because neither limitation, taken alone or together, creates uncertainty, indistinctness, or duplicity in the meaning of the policy, the "physical evidence requirement" does not create an ambiguity.

9

In ***Merlyn Vandervort Investments, LLC v. Essex Ins. Co., Inc.***, we reviewed a similar policy that conditioned coverage on the existence of both "Covered Property" and a "Covered Cause of Loss." We recognized that a plaintiff's claim must meet both requirements to receive coverage and the presence of exclusions later in the policy that limit the "Covered Cause of Loss," so long as they are clear, do not create an ambiguity. ***Merlyn Vandervort Invs., LLC v. Essex Ins. Co., Inc.***, 309 S.W.3d 333, 338 (Mo.App. 2010). Likewise, in ***Messina v. Shelter Ins. Co.***, the western district of this Court upheld a policy that required a covered cause of loss and included an exclusion to "Covered Cause of Loss" later in the policy. ***Messina v. Shelter Ins. Co.***, 585 S.W.3d 839, 841 (Mo.App. 2019). The same principle held true in ***Peters v. Employers Mut. Cas. Co***, where the policy required the existence of "Covered Property" and a "Covered Cause of Loss." ***Peters v. Employers Mut. Cas. Co.***, 853 S.W.2d 300, 303 (Mo. banc 1993). In ***Peters***, the Supreme Court upheld the trial court's finding of a "Covered Cause of Loss" and explained that so long as the damaged property qualified as "Covered Property" it would receive coverage. ***Id.*** In ***Pace Props., Inc. v. Am. Mfrs. Mut. Ins. Co.***, the eastern district of this Court determined that a property did not automatically qualify for coverage because the insured had to prove that his loss occurred to "Covered Property" and that the loss was the result of a "Covered Cause of Loss." ***Pace Props., Inc. v. Am. Mfrs. Mut. Ins. Co.***, 918 S.W.2d 883, 886 (Mo.App. 1996). Thus, if the policy is clearly written, the presence of an exclusion in the "Covered Cause of Loss" portion of a policy located after the definition of "Covered Property" does not render a policy ambiguous.

The policy's coverage provision states that United Fire "will pay for direct physical loss of or damage to Covered Property . . . cause[d] by or resulting from any Covered Cause

10

of Loss." First, the lost or damaged property must be "Covered Property" as defined by the policy. Second, the loss or damage must arise from a "Covered Cause of Loss." The policy states that property that goes missing without any physical evidence to show what happened to that property is not subject to a "Covered Cause of Loss." This two-part requirement does not grant coverage or otherwise promise coverage before taking it away. Thus, after reading the policy's coverage provision an ordinary person of average understanding could reasonably construe that the policy required two different conditions be met to qualify for coverage. Furthermore, the policy language is clear and unambiguous, so an ordinary person of average understanding would recognize that they must look beyond the definition of "Covered Property" to determine whether their property would receive coverage. ***Floyd–Tunnell,*** 439 S.W.3d at 221. We do not agree with the Chastains' assertion that a person would stop reading the policy after the first page even though they are clearly alerted from the outset that multiple criteria apply for coverage and several dozen pages remained unread. The policy's exclusion of coverage for claims that do not meet the coverage requirement is not ambiguous. Point I is denied.

### *Point II- There was no Genuine Dispute of Material Fact*

Appellants' second point asserts that there was a genuine issue of material fact regarding whether there was "no physical evidence to show what happened to the [V]ideos," because the Videos were physically observed by physically present employees.[6] Because "physical evidence" is not defined within the policy, we must define the term

---

[6] The Chastains' brief contains references to facts asserted within their denied motion for summary judgment. The Chastains' second point did not challenge the denial of their motion for summary judgment, and even if it had we would not consider it on appeal. As such, we consider only the material facts asserted in numbered paragraphs by United Fire in support of its motion for summary judgment and the Chastains' responses thereto contained in numbered paragraphs, pursuant to Rule 74.04(c). Rule references are to Supreme Court Rules (2020).

before determining whether there was a genuine dispute regarding the existence of physical evidence.

*Standard of Review*

On appeal, we apply the same criteria for testing the propriety of summary judgment as should be employed by the trial court to determine the propriety of sustaining the motion initially, essentially conducting a de novo review. **Blue Chalk Constr., LLC**, 497 S.W.3d at 834. The non-movant enjoys the benefit of all reasonable inferences from the record. **Id.** at 828. We determine whether a genuine dispute regarding a material fact exists by considering the movant's specific references in that numbered paragraph of its statement of uncontroverted material facts to the pleadings, discovery, exhibits, or affidavits attached to the movant's statement supporting the existence of that material fact, *see* Rule 74.04(c)(1); considering the non-movant's specific references to the discovery, exhibits, or affidavits attached to the response supporting the non-movant's denial of that material fact, *see* Rule 74.04(c)(2); and then comparing the two sets of specifically referenced evidence to ascertain the existence of a genuine issue as to that particular numbered paragraph's asserted material fact. **Id.** at 834. "To put a fact in genuine dispute, the non-movant cannot make a general denial but must 'support each denial with specific references to the discovery, exhibits or affidavits that demonstrate specific facts showing that there is a genuine issue for trial.'" **Laws v. Progressive Direct Ins. Co.**, 615 S.W.3d 861, 865 (Mo.App. 2020) (quoting Rule 74.04(c)(2)). A genuine dispute exists where the movant's proffered fact and non-movant's response demonstrate that there are two plausible versions of events. **Great S. Bank**, 497 S.W.3d at 834. If a genuine dispute exists then summary judgment is inappropriate. Rule 74.04(c).

The interpretation of an insurance contract is a question of law that we review *de novo*. **Cockerham v. Am. Family Mut. Ins. Co.**, 561 S.W.3d 862, 865 (Mo.App. 2018) (citing **Mendenhall v. Prop. & Cas. Ins. Co. of Hartford**, 375 S.W.3d 90, 92 (Mo. banc 2012)). When construing an insurance policy, we must give the words their plain meaning consistent with the reasonable expectations, objectives, and intent of the parties. **Cockerham**, 561 S.W.3d at 865. "Plain meaning" means that which would be attached by an ordinary person of average understanding if purchasing insurance. **Jones v. Mid-Century Ins. Co.**, 287 S.W.3d 687, 690 (Mo. banc 2009). This means a party may not manufacture a genuine dispute of material fact through the use of conjecture, hyperbole, postulation, or speculation as to the meaning of a contract. **Stanbrough v. Vitek Sols., Inc.**, 445 S.W.3d 90, 99 (Mo.App. 2014); *see also* **Betts-Lucas v. Hartmann**, 87 S.W.3d 310, 322 (Mo.App. 2002).

*Discussion*

The Chastains' second point centers on the interpretation of a phrase within the insurance policy and the application of that phrase to deny coverage. The policy states that damaged or lost property is not subject to a "Covered Cause of Loss" where the claim involves:

> Property that is missing, where the only evidence of the loss or damage is a shortage disclosed on taking inventory, or other instances where there is no *physical evidence* to show what happened to the property.

(Emphasis added). Because exclusionary clauses such as this are strictly construed against the drafter, the Chastains have an extremely low burden to show the exclusion is inapplicable. **Burns**, 303 S.W.3d at 510.

The Chastains argue that the meaning of "physical evidence" should be determined by examining insurance industry documents that explain how the insurance industry

13

views such a policy provision. We recognize that these documents may prove immeasurably valuable in other circumstances and recognize that documents such as these may reflect the understanding of United Fire at the time the policy was issued. However, these documents do not reflect the views of an ordinary person of average understanding when purchasing the policy. *Miller v. Ho Kun Yun*, 400 S.W.3d 779, 792 (Mo.App. 2013); *Farmland Indus., Inc. v. Republic Ins. Co.*, 941 S.W.2d 505, 510 (Mo. banc 1997). Had the insurance policy clearly demonstrated that "physical evidence" had a specific or technical meaning, then we would interpret it as such. However, the policy does not define or otherwise indicate that "physical evidence" has such a meaning, so we must determine the plain and ordinary meaning of "physical evidence." *Mendenhall*, 375 S.W.3d at 92. We also question whether we could consider these insurance industry documents as they were not part of the summary judgment record and, per the Supreme Court in *Green v. Fotoohighiam*, we may only consider those facts properly put before us through Rule 74.04(c)'s Statement of Uncontroverted Material Facts and the corresponding responses. *Green v. Fotoohighiam*, 606 S.W.3d 113, 121 (Mo. banc 2020).

When reviewing disputes regarding words or phrases in insurance policies we look to the definitions provided by the policy, but where a word or phrase is not defined, we look to the plain and ordinary meaning of the word or phrase as an ordinary person of average understanding would have understood it when buying the policy. *Faries v. United Sers. Auto. Ass'n*, 628 S.W.3d 257, 260 (Mo.App. 2021). We may refer to the dictionary to supply the meaning of the insurance policy's plain and ordinary language, but we must be mindful of the context of the insurance policy when selecting and applying the appropriate dictionary definition of the relevant terms. *Behrick v. Konert Farms*

14

*Homeowners' Ass'n*, 601 S.W.3d 567, 573 (Mo.App. 2020). The policy does not define "physical evidence," so, we look to the dictionary to determine the ordinary meaning of the term. ***Exotic Motors v. Zurich Am. Ins. Co.***, 597 S.W.3d 767, 772 (Mo.App. 2020).

"Physical" is an adjective used to modify the term "evidence," where "physical" means "2 a : having material existence: perceptible especially through the senses and subject to the laws of nature; b: of or relating to material things." *Physical*, MERRIAM WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2003). "Evidence" is: "1 a : an outward sign: INDICATION; b: something that furnishes proof: TESTIMONY[, specifically]: something legally submitted to a tribunal to ascertain the truth of a matter." *Evidence*, MERRIAM WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2003). Physical evidence or real evidence is "[p]hysical evidence (such as clothing or a knife wound) that itself plays a direct part in the incident in question." *Real Evidence*, BLACK'S LAW DICTIONARY (11th ed. 2019). Thus, "physical evidence" is a material or tangible object that furnishes proof of or the truth of the matter asserted.[7] *See **Pa. v. Muniz***, 496 U.S. 582, 582 (1990) (explaining that physical evidence constitutes items or things related to the events in question which is different than testimonial evidence.); *see also **Jackson By & Through Jackson v. Jackson***, 875 S.W.2d 590, 592 (Mo.App. 1994).

United Fire's policy requires "physical evidence." This is a higher burden than requiring "some evidence," which could be met with testimony. ***Elegant Slumming***, a

---

[7] In other insurance disputes we have observed that physical evidence included the vehicles present at an automobile collision, the papers forming a disputed contract, a high bank and depression in real property, smoke detectors present at the scene of a fire, or items removed from a mobile home. ***Arbuthnot v. N. Ins. Co. of N.Y.***, 140 S.W.3d 170, 173 (Mo.App. 2004); ***Bryant v. Bryant Const. Co.***, 425 S.W.2d 236, 238 (Mo.App. 1968); ***Koelling v. Ralph Anderson Lumber Co.***, 392 S.W.2d 393, 395 (Mo. banc 1965); ***Owens v. Unified Investigations & Scis., Inc.***, 166 S.W.3d 89, 93 (Mo.App. 2005); ***McCutcheon v. Cape Mobile Home Mart, Inc.***, 796 S.W.2d 901, 907 (Mo.App. 1990).

Delaware Supreme Court case, encapsulates how a court may view the higher burden that exists when a policy requires physical evidence. ***Nat'l Grange Mut. Ins. Co. v. Elegant Slumming, Inc.***, 59 A.3d 928 (Del. 2013). In ***Elegant Slumming*** an insured filed a claim wherein it alleged that some items of jewelry it had recently received had gone missing. ***Id.*** at 930. There were no signs of theft, though the insured believed that the jewelry had been inadvertently thrown away. ***Id.*** The insurer denied coverage relying on a nearly identical "missing property" exclusion that stated that the insurer would not pay for missing property in instances where there is no physical evidence to show what happened to the missing items. ***Id.*** Unlike the present case, the insured submitted purchase order invoices, shipping receipts for the jewelry, photographs of the desk where the jewelry packages were placed on arrival, and photographs showing the close proximity of trash bins in the area. ***Id.*** at 932-33. These items of physical evidence were complemented by testimony that explained each document's relevance, and explained that the jewelry had been received, placed near other trash at the desk and subsequently thrown away with the trash. ***Id.*** The Delaware Supreme Court explained that the testimony on its own would have been insufficient to meet the required "physical evidence" burden. ***Id.*** However, testimony paired with physical evidence could show what happened to the missing jewelry. ***Id.***

Thus, "physical evidence" as applied to the relevant exclusion required that there be some material or physical thing that provided proof of what happened to the Videos. To that end, testimonial evidence on its own would be contrary to the plain meaning of "physical evidence" and would not meet the evidentiary requirements of the

16

"missing property" limitation.[8]  We recognize that purely physical evidence may prove insufficient to explain the events at issue, so some testimonial explanation or foundation may be necessary to explain the relevance of the proffered physical evidence. ***Eckelkamp v. Burlington N. Santa Fe Ry. Co.***, 298 S.W.3d 546, 550 n.2 (Mo.App. 2009).  Having determined that "physical evidence" is a tangible or material thing that furnishes proof of or the truth of that for which it was asserted, and having also determined that such evidence may be supplemented by testimony, we must now determine whether the Chastains are correct in asserting that there was a genuine dispute regarding the existence of "physical evidence."

We begin by noting that the Chastains have not identified which material fact they believe was in dispute. After reviewing the numbered paragraphs and responses contained in United Fire's motion for summary judgment and the Chastains' response thereto, we can find only one material fact about which the existence of "physical evidence" might be in dispute.  United Fire alleged that:

> 11.  At all times relevant, Defendant Lawrence Photo failed to describe how, failed to provide any physical evidence, or otherwise failed to provide an explanation – to either the Chastains or to Defendant United Fire – as to how, when, and/or where the videos and tapes of the Chastains had ended up missing or lost.

(citations to record omitted).  The Chastains' response stated:

---

[8] Testimonial evidence without more corroborating evidence does not amount to "physical evidence" sufficient to show what happened to lost property.  Other jurisdictions have reached similar conclusions when interpreting such a physical evidence requirement.  In ***WestCom Corp. v. Greater N.Y. Mut. Ins. Co.***, the New York Supreme Court, Appellate Division, considered the same policy limitation now before us and found that an employee's testimony that property had earlier been placed in a location but was later found to be missing, did not qualify as physical evidence to show what happened to the missing property. ***WestCom Corp. v. Greater N.Y. Mut. Ins. Co.***, 41 A.D.3d 224 (N.Y. App. Div. 2007).  The United States Sixth Circuit addressed a similar issue in ***C.T.S.C. Boston, Inc v. Cont'l Ins. Co***, where the court held that observations and testimony that 57 laptops were missing without any evidence to show what happened to them was not physical evidence.  ***C.T.S.C. Boston, Inc. v. Cont'l Ins. Co.***, 25 Fed.Appx. 320 (6th Cir. 2001).

**Response: Deny**. Please see Plaintiff's Exhibit C, Delicato Depo., pp. 25-32, 63-64. Delicato has testified that Lawrence Photo closed permanently on April 25, 2015. From April 25, 2015 through and including May 5, 2015 (the day [Gary] Chastain came to Lawrence Photo – See Defendant's Exhibit F, Chastain Recorded Statement), Lawrence Photo employees had been moving items out of the store and cleaning the store out. According to Delicato, it was Lawrence Photo's responsibility to get all boxes and other items out of the store (except the assets purchased by the new owner) so that the new buyer could move into the store. Lawrence Photo had kept paying some employee for this very purpose. Delicato testified that Tyler Beck, a Lawrence Photo employee that had been responsible for the Chastain's order, recalled seeing the Chastain's videos on the day [Gary] Chastain came to the store. Beck recalled seeing the videos on the counter where completed customer orders were normally kept. However, when [Gary] Chastain arrived at the store, Beck went to the same counter to retrieve the videos and they were gone.

None of the evidence listed in the Chastains' response was physical evidence. Plaintiff's Exhibit C to the Chastains' Response to United Fire's Statement of Uncontroverted Material Facts and the Chastains' Supplemental Facts was the transcript from a video deposition taken of Kathy Delicato. Exhibit F was the transcript from a recorded conversation between United Fire's investigators and the Chastains. Though the Chastains' testimonial witnesses may have been physically present and may have observed the Videos at one point in time, their testimony is just that: testimony, without support from any items of physical evidence. Neither the Chastains' responses to the numbered paragraphs of United Fire's Statement of Uncontroverted Material Facts nor the Chastains' Supplemental Material Facts mention any photographs, video recordings, receipts, invoices, storage logs, or any other physical evidence that might show what happened to the Videos.[9] Rather, they rely exclusively on testimonial evidence to assert that there was physical evidence as required by the policy. Consequentially, the

---

[9] As stated above, we are only allowed to consider those facts properly put before us through the numbered paragraphs of the Statement of Uncontroverted Material Facts and the corresponding responses required by Rule 74.04(c). *Fotoohighiam*, 606 S.W.3d at 121.

18

Chastains' response denying United Fire's statement of material facts does not provide any explanation of what happened to the Videos and does not identify contrary evidence or provide a plausible alternative version of events.  Therefore, the Chastains have not demonstrated the existence of a genuine dispute.

United Fire's policy required physical evidence, not just some evidence.  However, the Chastains did not provide any physical evidence showing what happened to the Videos in response to United Fire's motion for summary judgment.  As a result, there was no genuine dispute regarding the nonexistence of physical evidence.  Absent a genuine dispute about a material fact, summary judgment was properly entered in United Fire's favor.  Point II is denied and the judgment of the trial court is affirmed.

JACK A. L. GOODMAN, C.J. – OPINION AUTHOR

JEFFREY W. BATES, J. – CONCURS

WILLIAM W. FRANCIS, JR., J. – CONCURS